Mr. Chief Justice Marshall
 

 delivered the opinion of the court, that every question arising in the cause had been settled by former'decisions.
 

 Judgment affirmed, with costs.
 
 c
 

 c
 

 In the. case of M‘Ilvaine v. Coxe’s lessee, 3
 
 Cranch,
 
 209, the court determined that a personborn in the colony otNewJersey, before the declaration of independence, and residing there until 1777, hut who then joined the. British army, and ever sineeadheredtotheBritish government, has a right
 
 tó
 
 lakelands by descent in the state of New-Jersey. But in
 
 *13
 
 Dawson’s lessee v. Godfrey, 4
 
 Cranch,
 
 321, it was held that a person born in England before the declaration of independence,and who always resided there, and never was in the United Stupes, could not take lands in Maryland by descent.
 

 And in the case of Smith v. the State of Maryland, 4 Cranch, 286, it was determined that by the acts of Maryland, 1780,ch, 45 and 49, the equitable interests of British subjects in lands were confiscated; and vested in the state, without office found, prior to the treaty of peace of 1783, so that the British
 
 ceslúi que trust
 
 was not protected by the stipulation in that treaty, against future confiscations, nor by the stipulation in the 9tb article of the treaty of. 1794, securing to British subjects, who then held lands in this country, the right to continue to hold them.
 

 In the supreme court of N. York it has been held, that where a married woman was a subject of Great Britain before the revolution, arid always continued such, but her husband, resided in this country both before and after, that period she was entitled to dower out of those lands of which he was seised befere -the revolution, but not of those of which he was subsequently seised. Kelly v. Harrison, 2
 
 Johns. Cas.
 
 29. The sarhe court has also determined, that where a British subject died seized of lands in file state in 1752, . leaving ■daughters in England who married British subjects, and nei. ther they nor their wives were citizens of the Unitted States! even if the marriages were subsequent to the revolution, such marriages would notimpair the rights of the wives, nor prevent the full enjoyment of the property according, to the laws of the marriage state, especially after the 5th provision in the 9th article of the treaty ofl794 The court seemed also to think that where the title to land in the state was acquired by a British subjeetprior to the revolution; the right of such British subject to transmit the same by descent, to an heir
 
 in esse
 
 at the time of the revolution, continued unaltered and unimpaired,- the case of a revolution or division of an empire being an exception to the gen-rule of law,' that an alien cannot take bv descent. Jack
 
 *14
 
 son v. Lunn.
 
 3 Johns. Cas.
 
 109. also Jackson v.
 
 Wright,
 
 4
 
 Johns.
 
 R. 75. The treaty of 1704, relates only to landa'//ierc
 
 held
 
 by British subjects, and not to any after acquired lands. Jackson v. Decker, 11
 
 Johns. R.
 
 418, 422.
 

 In the case of Fairfax’s devisee v. Hunter’s lessee, 7
 
 Cranch,
 
 603, and
 
 ante,
 
 vol. I. p. 304. it was adjudged, 1st. That an alien enemy may' take by purchase though not by descent; and that, vWiether the purchase be by grant or'by devise. 2d. That the title thus acquired by an alien enemy is no devested until
 
 office found-
 
 3d. That whether the treaty of peace of- 1783, declaring that no future confiscations should be made, protects from forfeiture, under the municipal laws respecting alienage, lands held by British subjects at the time of its ratification, or not, yet that the 9th article of the •treaty of 1794 completely protected the title of.a British devisee, whose estate had pot been preyiously devested .by an inquest-of office, or some eqivalent proceeding