HESS et al. v. STATE.

No. 10435—Opinion Filed Nov. 29, 1921.

(Syllabus.)

1. **Intoxicating Liquors — Searches and Seizures—Forfeiture of Property—Statutory Provision—Jurisdiction of Courts.**

Section 3617 of Revised Laws of 1910, does not authorize an officer having power to serve criminal process to search premises without a search warrant, but only authorizes such officer, when a violation of any provision of the prohibitory laws occurs in his presence, to arrest the offender without a warrant and seize any liquor, bars, furniture, fixtures, vessels, and appurtenances thereunto belonging unlawfully used in the commission of the offense committed in his presence, and when a seizure of such property is so made, such seizing officer must immediately take the seized property before the court or judge having jurisdiction of the offense for which the offender was arrested, and there make complaint, under oath, charging the offense so committed, and make a return setting forth a particular description of the liquor and property seized. Thereupon, the court or judge must issue a warrant commanding and directing the officer to hold the property so seized in his possession until discharged by due process of law, and such action on the part of the seizing officer and court is necessary to vest the court with jurisdiction to entertain a proceeding for the forfeiture of such property.

2. **Same—Search and Seizure Without Search Warrant—Rooming Houses — Constitutional Rights.**

The entry by an officer upon the premises of an individual occupied and used as a rooming house without a search warrant and the searching of the premises and the seizure of furniture, bedding, and fixtures in the rooming house without the process of any court authorizing such search and seizure was unauthorized, and such officer was a trespasser and the seizure of the property under such circumstances was an invasion of the constitutional rights of the person occupying the premises guaranteed by article 2, section 30 of the Bill of Rights of the Constitution, relating to unreasonable searches and seizures, and the property so seized under such circumstances should have been ordered returned to the occupant of the premises by the court in which forfeiture proceedings were instituted pursuant to such unlawful acts.

3. **Same—Seizure and Forfeiture of Property—Statutory Proceedings — Jurisdiction.**

The forfeiture of property alleged to have been used in violation of the prohibitory laws of the state is a statutory proceeding, and a court cannot acquire jurisdiction of property sought to be forfeited except in the manner prescribed by the statute.

Error from County Court, Oklahoma County; W. R. Taylor, Judge.

Action by the State of Oklahoma for the forfeiture of property; Addie Hess and others, claimants and interveners. Judgment of forfeiture. Claimants and interveners appeal. Judgment vacated, and cause remanded, with directions.

Charles H. Ruth, for intervener Addie Hess.

Harlan T. Deupree, for intervener Robert Ball.

Joe Bailey Allen, for intervener Sigmund Mayer.

Ledbetter, Stuart & Bell, for intervener Phonograph Shop, Inc.

M. S. Singleton, for intervener White Sewing Machine Company.

Robert Burns, County Attorney, for the State.

KENNAMER, J. This appeal is prosecuted by Addie Hess, White Sewing Machine Company, a corporation, Phonograph Shop, Sigmund Mayer, and Robert Ball, as plaintiffs in error, to reverse a judgment of forfeiture entered in the county court of Oklahoma county, Oklahoma, on the 21st day of June, 1918, decreeing the forfeiture of furniture and fixtures used in a rooming house at 220½ and 222½ North Broadway, Oklahoma City, to the state of Oklahoma, defendant in error.

The record discloses that on or about May 20, 1918, Wade Spears, a police officer of Oklahoma City, went to this rooming house without a search warrant, seized the property, and thereafter, on the 21st day of May, caused to be filed in the county court the following information:

"In the name and by the authority of the state of Oklahoma, comes now Charles B. Selby, the duly qualified and acting county attorney, in and for Oklahoma county, state of Oklahoma, and on his official oath gives the county court in and for said Oklahoma county and state of Oklahoma to know and be informed that heretofore, towit, on the 1st day of March, 1918, continuously up to and including the 20th day of May, 1918, in Oklahoma county, state of Oklahoma, Addie Hess, whose full and correct name is to your informant unknown, then and there being, did then and there willfully and unlawfull · ·· tain a nuisance in this, that she, the said Addie Hess, then and there being the lessee of those premises described as 220½ and 222½ North Broadway street, Okla-

homa City, Oklahoma county, state of Oklahoma, and then and there being in possession and occupancy thereof as such lessee, in the conduct, operation and management of a rooming house under the name of Hess Rooms, did then and there willfully, unlawfully, wrongfully and knowingly invite and procure persons of both sexes to thereto resort and congregate for immoral purposes and where such persons so resorting and congregating continuously during said period of time conducted themselves in other respects in a disorderly manner in this: that such persons were intoxicated and in a drunken condition and used vile, obscene, indecent and profane language, and did expose their nude persons, all of which said acts offends the decency and endangers the comfort, repose, health and safety of others, all to the common nuisance of the public. Contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Oklahoma, Charles B. Selby, County Attorney, Oklahoma County."

That after having filed the information, he made the following return of his acts with reference to the property seized by him:

"I, the undersigned, Wade Spear, who verified the information filed in the above court on the 21st day of May, 1918, against Addie Hess, defendant, a copy of which information is hereto attached, marked Exhibit 'A', and made a part hereof, do hereby make, in said case, the return following:

"That the said violation and offense set out the charge in said information occurred in my presence in said Oklahoma county, Oklahoma, on the 20th day of May, 1918, and that arrested the Addie Hess, therefore, without warrant; and at the same time and place seized and now hold in my possession and before the court, the personal property following:

"One lot of furniture and fixtures now at 220½ and 222½ North Broadway, copy of which is hereto attached, marked Exhibit 'A,' and made a part thereof, of which the said Addie Hess, defendant, was then and there using unlawfully in the commission of said offense. That the same was seized by me at 220½ and 222½ North Broadway, in Oklahoma City, said county and state, and I now have the same in possession, and pray that warrant issue to me, the sheriff of said county directing that the same be held until discharged by due process of law and that hearing and adjudication on this return be had in like manner so if the seizure had been made under search warrant.

"Wade Spear."

"Subscribed and sworn to before me this 21st day of May, 1918.

"Carol Sanders."
"Deputy Court Clerk."

That thereafter Addie Hess, on the 29th day of May, 1918, filed a verified claim of said property and denied that the property was being used in violation of the laws of the state of Oklahoma.

The Phonograph Shop, Inc., filed a plea of intervention, asserting a lien upon one Edison Diamond Disc Phonograph, style C-200, No. 11976.

The White Sewing Machine Company filed a plea of intervention, asserting ownership to the White sewing machine No. 2629473 by virtue of a conditional sale contract.

Sigmund Mayer filed a plea of intervention, asserting that he had a mortgage lien upon a part of the property seized by the officer, Wade Spear.

Robert Ball filed a plea of intervention, asserting that he had a mortgage lien upon the property to secure the payment of $750 and there was balance due on said mortgage debt of $500.

The interveners all asserted that they had no knowledge of any of said property being used in any way in violation of the law of the state of Oklahoma.

On the 21st day of June, 1918, the cause came on for trial and a jury was impaneled and the cause proceeded to trial. Wade Spear was called as the first witness on behalf of the state, and at the time the state offered his testimony Addie Hess, claimant of the property, made an objection to the introduction of any testimony on behalf of the state for the reason that the petition wholly fails to state a cause of action in favor of the state and against the claimant, Addie Hess, for the confiscation of the property. The record does not disclose whether or not the objection was ever ruled upon by the court. A brief review of the testimony found in the record discloses about the following state of facts: That the claimant, Mrs. Hess, for some time had been conducting a rooming house at 220½ and 222½ North Broadway, Oklahoma City. That the building in which the rooming house was conducted on the date of the seizure had about 40 rooms furnished with the ordinary fixtures and bedding of an ordinary rooming house. That one week prior to the raid made by Wade Spear, one Mrs. Herbert C. Monroe had been rooming at

Mrs. Hess' place. She testified that during the week she roomed there she had noticed some people that appeared to be intoxicated at times; that on the night prior to the raid some soldiers were stopping at the rooming house and they had been singing "Nobody Knows How Dry I Am." The evidence shows that there had been some ill feeling between Mrs. Monroe and Mrs. Hess, and that on the night of the seizure of the property by the officer Mrs. Monroe had notified the officers of the disorderly conduct.

Wade Spear, the officer who seized the property, testified that at the time he made the seizure he found three men in the hall who appeared to be intoxicated, and that a woman was found in her room intoxicated; that he found two or three empty whisky bottles about the place with about a teaspoonful of whisky in them.

The other evidence introduced on behalf of the state in substance shows that there was at this time from one to three people in the house that appeared to be intoxicated. The record of the evidence wholly fails to connect the claimant, Mrs. Hess, in any way with having sold, bartered, or otherwise furnished intoxicating liquors to any one.

At the close of the state's testimony the claimant, Addie Hess, and the interveners demurred to the testimony introduced on behalf of the state, which was by the court overruled and exceptions allowed.

The evidence on behalf of the claimant, Addie Hess, was introduced, including her own testimony specifically denying any violation of the prohibitory laws of the state.

Evidence was introduced by the interveners, asserting their liens and interests in the property, which was undisputed.

At the close of all of the testimony introduced, the claimant, Addie Hess, and the interveners requested the court to instruct the jury to return a verdict in their favor, which was refused by the court and exceptions allowed. The court instructed the jury, and verdict was returned in favor of the state, and judgment entered confiscating all of the property. The claimant, Addie Hess, and the interveners all appealed to this court and have assigned numerous assignments of error, but upon an examination of the record in this cause, having reached the conclusion that the court was without jurisdiction to enter the judgment, which the court entered upon the verdict of the jury, it will be unnecessary to consider any of the errors complained of with respect to the instructions of the court.

The seizure of the property made under the circumstances as disclosed by the record was illegal and wholly unauthorized under the Constitution and laws of this state. Section 3617, Revised Laws of 1910, provides:

"When a violation of any provision of this chapter shall occur in the presence of any sheriff, constable, marshal, or other officer having power to serve criminal process, it shall be the duty of such officer, without warrant, to arrest the offender and seize the liquor, bars, furniture, fixtures, vessels, and appurtenances thereunto belonging so unlawfully used, and to take the same immediately before the court or judge having jurisdiction in the premises, and there make complaint, under oath, charging the offense so committed, and he shall also make return, setting forth a particular description of the liquor and property seized, and of the place where the same was so seized, whereupon the court or judge shall issue a warrant commanding and directing the officer to hold the property so seized in his possession until discharged by due process of law, and such property shall be held and a hearing and adjudication on said return had in like manner as if the seizure had been made under a warrant therefor."

The record of this transaction, as disclosed by the seizing officer, Mr. Spear, makes it clear that his seizure was unauthorized and illegal. He does not pretend to claim or testify that any one in this rooming house in his presence sold, bartered, gave away, or otherwise furnished any liquors to any one. He does not claim that any one was in the unlawful possession of any liquors, and after his unauthorized search, according to his own testimony, he found not to exceed a teaspoonful of liquor on the place. In making this search of the premises and the seizure of this property he did so in violation of the constitutional rights of the claimant, Mrs. Hess. Article 2, section 30, of the Bill of Rights of the Constitution, provides:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized. (Bunn's Ed., sec. 39)."

It may be conceded that this officer had authority to arrest any person that

appeared in his presence in a disorderly or intoxicated condition, but no such authority vested such officer with the right to search a building of 40 rooms and seize the furniture and fixtures of the rooms that were in no way connected with the disorderly conduct of a guest at the house. It is clear from the reading of the statute authorizing an officer without a warrant to make a seizure that the statute contemplates the officer seizing liquors, bars, furniture, fixtures, vessels, and appurtenances being presently used in the open violation of the prohibitory laws of the state.

In the case at bar the information filed by the seizing officer nowhere charges the owner and claimant of the property with a violation of the prohibitory laws, but merely charges her with maintaining a nuisance by permitting people to willfully and unlawfully congregate at her house for immoral purposes. In no way does the information charge the claimant with having sold, bartered, or otherwise furnished intoxicating liquors. The statute, section 3617, supra, makes it the duty of the seizing officer without a warrant to take such property immediately before the court having jurisdiction in the premises, and there make complaint under oath charging the offense so committed, and the judge shall issue a warrant commanding and directing the officer to hold the property so seized in his possession until discharged by due process of law. The record in the case at bar fails to show that any warrant has ever been issued as provided for in the statute; therefore, the whole proceeding is unauthorized and in violation of the statute, and the court was without jurisdiction to try the cause or decree a forfeiture of the property. In the case of Titsworth v. State, 2 Okla. Cr. 214, 101 Pac. 288, the court held:

"This court appreciates the frankness of Hon. Fred. S. Caldwell, enforcement attorney, and indorses as correct the following statement contained in his brief, and adopts it as a part of the syllabus of this case: 'It is not per se unlawful under that statute for a person engaged in any other business than the drug business to keep or use in or about his place of business, intoxicating liquors. That is to say, in the case of a groceryman, hardware merchant, dry goods merchant, or any other than the drug business, the keeping of intoxicating liquor in or about the place of business would not constitute a crime, unless accompanied with the intent of the possessor to use or dispose

of the same in violation of some one or more of the provisions of the enforcing act.' "

The most that can be said of the testimony introduced on behalf of the state is that the officer seized the property in controversy on going upon the premises, where the seizure was made, found some evidence that a few persons at the rooming house had been drinking intoxicating liquors, and proceeded without any authority of law to make a search of the premises and a seizure of all of the property within the rooming house.

In the case of Youman v. Commonwealth of Kentucky, 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303, the Supreme Court of Kentucky had before it for review the conviction of Youman of the offense of having in his possession liquors. It appears that the court had issued a warrant for the arrest of Youman, and that the sheriff, accompanied by other officers, went to the residence of Youman for the purpose of executing the warrant. Youman not being present while the officers were on the premises, the officers decided to make a search of his premises for liquor, and searched the premises without a search warrant and found under the floor of a small house near the residence several gallons of whisky. Later Youman surrendered to the sheriff and was put upon trial in the circuit court, and on the trial of the cause, after the objection of the counsel for Youman, the sheriff and other officers were permitted to testify concerning their search of the premises and the discovery, seizure, and disposition of the liquor. The Supreme Court of Kentucky reversed the judgment of conviction and in an opinion delivered by Carroll, C. J., held:

"It will be observed that the Constitution secures the people against 'unreasonable search and seizure and from the use of the word "unreasonable" it might be thought that a reasonable search and seizure, or one that was not unreasonable, would be allowed without a search warrant. But there is no foundation for this construction. The section does not permit any kind or character of search of houses, papers, or possessions without a search warrant.

"In Boyd v. United States, 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. Rep. 524, there will be found an interesting and instructive historical account of the reasons why the word 'unreasonable' was introduced into the section in the federal Constitution, and these same reasons doubtless

caused it to be put in the section in the first Constitution of this state, of which the present section is a copy. From the opinion in the Boyd Case it will be seen that the prohibition against 'unreasonable' search and seizure was inserted to meet a practice that had grown up in revolutionary times, and to protect citizens, not only against this practice, but against all searches and seizures of their property without a search warrant.

"This constitutional provision, which is broad enough to, and does, include every article and species of property, was intended to afford the individual, however humble he may be, protection and security against any unlawful invasion of his premises, or possessions by officers of the law, assuming to act under color of their office, and no officer has a lawful right to search on suspicion or without a warrant expressly authorizing it, the possessions or premises of another, or anything found therein or thereon, such · as boxes, barrels, drawers, closets, or other places, in which articles of property of any kind may have been placed by the owner; and this absolute security against unlawful search or seizure exists, without reference to the guilt or innocence of the person whose property or premises are searched.

"The mere fact that he is guilty, or that there may be reasonable grounds to believe that he is guilty of the charge preferred against him, of the offense of which he is suspected, will afford no excuse or justification for an unlawful search or seizure."

It is true in certain instances that an officer may seize property used in the commission of a crime committed in his presence, but such authority does not confer upon him the right or authority to search for and seize property where the offender charged with an offense is not using the same in his immediate presence in the commission of crime. The authorities appear to support the rule that where an unlawful seizure of property has been made, it is the duty of the court to order the officer making such seizure to return the property to the party that he made the seizure from.

In the case of People v. Marxhausen, 204 Mich. 559, 3 A. L. R. 1055, 171 N. W. 557, the Supreme Court of Michigan had before it a case where the officers went to the premises of Marxhausen without a search warrant, searched his house, secured a quantity of liquor, which liquor was carried to a county building and stored. Marxhausen was prosecuted for a violation of the liquor laws, and before the case came on for trial moved the court to quash the prosecution against him and return the liquor that had been seized. The motions were sustained by the court, and the prosecution appealed. In affirming the action of the trial court, the court said:

"These officers had no search warrant issued upon oath or affirmation; no search warrant of any kind. They entered the home of defendant by command of no court; they searched his premises by virtue of no process. They justify, if at all, under administrative will and mandate, not recognized by the Constitution; and unauthorized, in a government of laws. That 'the end justifies the means' is a doctrine which has not found lodgment in the archives of this court. The search and seizure detailed in this record was an unauthorized trespass and an invasion of the constitutional rights of this defendant. These rights of the individual in his person and property should be held sacred, and any attempt to fritter them away, under the guise of enforcing drastic sumptuary legislation (no matter how beneficial to the people it may be claimed to be), must meet with the clear and earnest disapproval of the courts."

In the case of the State v. Sheridan, 121 Iowa, 164, 96 N. W. 730, the same rule is announced.

In the case of Amos v. United States (U. S. Adv. Ops. 1920-1921, page 316) 41 Sup. Ct. Rep. 261, the Supreme Court of the United · States in the first syllabus paragraph announced the following rule of law:

"Property seized in the search of a private home by government agents without warrant of any kind, in plain violation of U. S. Const., 4th and 5th Amendments, should have been returned to the owner on his petition, presented by him after the jury in a criminal prosecution against him was impaneled, but before any evidence was offered."

It appears to us that it would place the courts organized and established for the purpose of enforcing the laws of the state in a most ridiculous position to permit a judgment or decree to stand, the very foundation of which is based upon a violation of the law and a disregard for the constitutional protection guaranteed to every citizen within the state.

Can it be maintained that a citizen may be deprived of his property by a proceeding which has had its inception in an open and flagrant violation of the laws of the state by a sworn officer, whose duty it is to uphold and enforce the law?

Can it be said that constitutional government any longer exists in this country if the citizen and his property are subject to seizure at any moment's time without the authority or mandate of any court, but merely upon the initiative and authority of an officer acting without the authority or process of any court? In the case of Youman v. Commonwealth, supra, we desire to direct attention to the able and pertinent statement of Mr. Chief Justice Carroll of the Supreme Court of Kentucky, which is as follows:

"On these facts the question presented is: Will courts, established to administer justice and enforce the laws of the state, receive, over the objection of the accused, evidence offered by the prosecution that was admittedly obtained by a public officer in deliberate disregard of law for the purpose of securing the conviction of an alleged offender? In other words, will courts authorize and encourage public officers to violate the law, and close their eyes to methods that must inevitably bring the law into disrepute, in order that an accused may be found guilty? Will a high court of the state say, in effect, to one of its officers, that the Constitution of the state prohibits a search of the premises of a person without a search warrant, but if you can obtain evidence against the accused by so doing you may go to his premises, break open the doors of his house, and search it in his absence, or over his protest, if present, and this court will permit the evidence so secured to go to the jury to secure his conviction?

"It seems to us that a practice like this would do infinitely more harm than good in the administration of justice; that it would surely create in the minds of the people the belief that courts had no respect for the Constitution or laws, when respect interfered with the ends desired to be accomplished. We cannot give our approval to a practice like this. It is much better that a guilty individual should escape punishment than that a court of justice should put aside a vital fundamental principle of the law in order to secure his conviction. In the exercise of their great powers, courts have no higher duty to perform than those involving the protection of the citizen in the civil rights guaranteed to him by the Constitution, and if at any time the protection of these rights should delay, or even defeat, the ends of justice in the particular case, it is better for the public good that this should happen than that a great constitutional mandate should be nullified. It is trifling with the importance of the question to say, as some courts have said, that the injured party has his cause of action against the officer, and this should

be sufficient satisfaction. Perhaps, so far as the rights of the individual are concerned, this might answer; but it does not meet the demands of the law-abiding public, who are more interested in the preservation of fundamental principles than they are in the punishment of some petty offender.

"In this connection, and before closing this branch of the case, we must add the weighty and pertinent words of Justice Holmes, speaking for the Supreme Court of the United States, in Silverthorn Lumber Co. v. United States, 251 U. S. 385, 64 L. Ed. 319, 40 Sup. Ct. Rep. 182. In that case officers of the United States without a 'shadow of authority,' went to the office of the company and made a clean sweep of all the books, papers, and documents found there. An application was made as soon as might be to the district court, for a return of what thus had been taken unlawfully.' This motion was opposed by the district attorney, and the district court ordered a return of the originals, but retained photographs and copies. After this the lumber company was summoned to produce the originals, and upon its refusal it was fined for contempt of court, and one of the owners of the company ordered to be imprisoned until he should purge himself of the contempt, which consisted in his refusal to produce the original books and papers that had been unlawfully taken, and returned after copies had been made. In reversing the judgment of contempt, Justice Holmes said: 'The government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its rights to avail itself of the knowledge obtained by that means, which otherwise it would not have had. The proposition could not be presented more nakedly. It is that, although of course its seizure was an outrage which the government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the Constitution covers the physical possession, but not any advantages that the government can gain over the object of its pursuit by doing the forbidden act. Weeks v. United States, 232 U. S. 383, 58 L. Ed. 652, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 341. Ann. Cas. 1915C, 1117, to be sure, had established that laying the papers directly before the grand jury was unwarranted, but it is taken to mean only that two steps are required instead of one. It reduces the 4th Amendment to a form of words. 232 U. S. 393. The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at

all. Of course, this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source, they may be proved like any others, but the knowledge gained by the government's own wrong cannot be used by it in the way proposed.'"

Section 3617, Revised Laws, 1910, supra, does not authorize an officer to make a search of premises without a search warrant, but provides that where a violation of the prohibitory laws takes place in the presence of an officer, he may arrest the offender, seize the liquor, bar, furniture, fixtures, etc.; and then provides that after such seizure the seizing officer must take the same immediately before the court or judge having jurisdiction in the premises and there make complaint under oath, charging the offense so committed. The court should thereupon issue a warrant commanding the officer to hold the property so seized in his possession until discharged by due process of law. The record in the case at bar fails to show that any complaint was ever made against the owner of the property or the party in possession on the date of the seizure. Nowhere does it appear in the record that the owner of this property violated any of the prohibitory laws of this state in the presence of the officer or was using the property in the presence of the officer in violation of the prohibitory laws, but the officer, without the process of any court, by force, took possession of all of the furniture, bedding, and fixtures in the rooming house, but never at any time was the property before the court as prescribed by the statute. Under this state of facts the seizing officer was nothing but a trespasser acting in open violation of law, and the trial court should have, on ascertaining the facts, ordered the seizing officer to return the property to the claimant, and a judgment of forfeiture entered under such a proceeding is absolutely null and void.

The function of the courts of this country is to enforce a government of laws, and not a government of men. The final arbiter in all cases presented to appellate courts is the substantive law as controlled, limited, and regulated by the written law. (Meaning by the written law, the federal and state Constitutions and the statute law enacted in accordance with the Constitutions.) When an appellate court abandons the law as thus defined, it puts its ear to the ground to determine what is popular and what will or will not please the popular will. Such a court is then treading near a precipice that may engulf this government in anarchy. Such a court has broken with the law and the accepted wisdom of the ages, and is accepting in lieu thereof the rule of the popular will, and this is only a euphonious name for mob law, and means nothing else but mob law in its final analysis. Between these two positions there can be no halting of the ways if we are to save our government from confusion and ultimate anarchy.

We know of no court or judge that has openly and specifically committed itself to a rule of men in lieu of a rule of law. This does not mean that the courts are opposed to progress or change, but does mean that the courts are irretrievably committed to the propositions that when these changes come, they must be changes in accordance with the fixed rules of law, providing for such changes, and not by ignoring, overriding, and disregarding the legal methods providing for such changes.

For the reasons herein stated, the judgment of the trial court is held to be void, and the cause is reversed and remanded, with directions to the county court of Oklahoma county to order the seizing officer to return the property to the claimant, Mrs. Addie Hess, and the interveners, as their interests may appear.

HARRISON, C. J., PITCHFORD, V. C. J., and JOHNSON, MILLER, and ELTING, JJ., concur.