## B. E. SMITH et al. v. STATE.

No. A-4179.    Opinion Filed April 12, 1922.
(205 Pac. 1105.)

(Syllabus.)

**Evidence—Parol Testimony as to Existence of Search Warrant.**—The evidence procured by means of a search warrant held proper under the circumstances in this case, and not within the rule announced in Hess v. State, 84 Okla. 73, 202 Pac. 310, relating to illegal seizures.

Appeal from County Court, Caddo County; C. B. Case, Judge.

B. E. Smith and Henry Spence were convicted of manufacturing intoxicating liquor, and they appeal. Affirmed as to defendant Smith and reversed and remanded as to defendant Spence.

R. Brett and Morgan & Osmond, for plaintiffs in error.

Geo. F. Short, Atty. Gen., and R. E. Wood, Asst. Atty. Gen., for the State.

BESSEY, J. The accused, for convenience, will be referred to as the defendants, who were, by information filed in the county court of Caddo county, charged jointly with the un-

lawful manufacture of intoxicating liquors. B. E. Smith was a farmer living with his family on an Indian lease near Carnegie. Defendant Spence was an employee of Smith. On November 9, 1921, the sheriff and certain of his deputies went to the premises of Smith, with a search warrant, to look for an illicit still. Some distance from the residence they found a barrel of whisky, 2 copper cookers, and 20 barrels of mash buried in a pit near the timber or underbrush, where other detached parts of a distilling outfit were found. When the officers arrived Smith was not there. In the search of the residence of Smith a bottle of whisky and a copper cooker were found. Presently Smith returned, and was placed under arrest. Spence drove up to a shed or crib with a load of corn, and was also placed under arrest. There is evidence tending to show that Smith's wife sought to mislead the sheriff and his deputies, so that they would not go near the stacks of feed and the place where the distilling operations were partially concealed.

There was no direct evidence connecting Spence with the offense, except the fact that he was a laborer there on the farm. The only reference in the record affecting Spence is as follows:

"Q. Who was there when you got out there? A. Mrs. Smith, Mrs. Spence, and Mr. Spence came up pretty soon.

"Q. Now, after you had searched the house, what officers searched the premises? A. Me and Burns and Banks. Mr. Spence came up afterwards, and I left him with Mr. Knupp. * * *

"Q. Did you have a conversation with Mr. Spence? A. I just asked Mr. Spence what he was doing there, and he said whisky around there, and he said, 'Well, if they are, I didn't know it.' He said he thought they were doing something. He said that some fellows come there and left after supper. He said he just drove in with a load of corn. I said, 'Ever see

that thing in the house?' He said 'Yes, I seen it, but I didn't know what it was.'

"Q. How long did you say he had been working there? A. About a year."

One of the assignments of error urged is that the court, over the protest of defendants, permitted secondary evidence of the search warrant to be introduced in evidence; that, excluding this secondary evidence, there was no proof that these officers had a search warrant, and that, according to the doctrine announced by our Supreme Court in Hess v. State, 84 Okla. 73, 202 Pac. 310, and by the United States Supreme Court in Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, and Weeks v. U. S., 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, evidence procured by officers by means of an unlawful search or seizure cannot be used against the defendants. The evidence complained of appears in the record on the part of J. R. Cox, sheriff, and R. A. Burns, deputy sheriff, and is as follows:

"Q. Did you secure a search warrant for Smith's place? A. Yes, sir.

"Q. Do you remember when it was secured, this search warrant?

"H. W. Morgan: Objected to as not the best evidence.

"The Court: Objection overruled.

"H. W. Morgan: Exception.

"A. I don't remember.

"* * * A. I don't remember whether we filed this warrant the day before or earlier. * * *

"Q. What did you do by reason of this search warrant? A. I went to the B. E. Smith place and served the search warrant. He wasn't home, and I gave a copy to Mrs. Smith, and she said she was Mrs. B. E. Smith.

"Q. Then what did you do? A. Started to search the place. She objected to me—

"H. W. Morgan: Objected to by counsel for the defendant; that the return on the search warrant is the best evidence; and for the further reason that it has not been shown that the search warrant was served and filed before the time of the search.

"The Court: Objection overruled.

"H. W. Morgan: Exception. * * *

"Q. (To Mr. Burns). Do you recall the officers getting a search warrant to search the premises of B. E. Smith? A. Yes, sir.

"Q. Do you remember when it was issued? A. Well, I don't remember the date.

"Q. Just tell the jury what you did under the search warrant.

"H. W. Morgan: Objected to as not the best evidence.

"By the Court: Objection overruled.

"H. W. Morgan: Exception.

"A. We went to Mr. Smith's place, and searched the place and found this box and cooker in the house in the north room. We found the whisky in the kitchen, or the east room. Then we found, about 250 yards from his house, these two cookers and this stuff here and a barrel of whisky, and another barrel with five or six or seven gallons in it, I believe, and a barrel full of water that the worm was in, a well, spade, kegs; and over at this place where the still was buried they had a pit dug for a furnace, and had holes cut in the tin that went over it, and the cookers set down in the pit. We found 20 barrels of mash buried about 10 or 20 steps from where the still was. The holes were dug in the pit just a little bigger than the top of a barrel, and two 1x12 planks put together had been made to set on the floors, and these had been covered over and made to look as near like the plowed ground as possible. They had dug pits right in the ground in the potato patch where the mash was buried."

To us it appears that this was primary evidence that the officers had a search warrant. No effort was made to show its contents by secondary evidence or otherwise. There is no claim made that the officers did not have a warrant, and no effort was made to show that it was not sufficient to give the officers authority to make the search they actually did make. In order to expedite the trial, the existence of a writing may be proved by parol evidence, although it is not produced. If there is any dispute about its existence or about its contents the writing, of course, would be the best evidence. Evidence, 10 R. C. L. § 55.

The damaging evidence against the defendants obtained by means of this search warrant, for the most part, was not found at the residence, but hidden about a quarter of a mile distant, in and near an unfrequented tract of timber and underbrush. Here it was they found the barrel of whisky, the furnace and distilling containers, the coil and condensing apparatus. No papers were seized; no private trunks or boxes were opened; no clothing or other private property was disturbed, carried away, or destroyed, as in the Hess Case, supra. The principles announced in the Hess Case will not be made to apply to conditions like this. We think there was primary evidence that the officers were armed with a search warrant; and the introduction of the bottle of whisky and the copper stewing vessel found at the house, similar to those found elsewhere, was proper, as tending to show that defendant Smith was manufacturing whisky.

The instructions seem to fairly cover the issues in the case, and in all other respects, so far as the record shows, defendant Smith was accorded a fair trial, and as to him the judgment of the trial court is affirmed.

As to the defendant Spence, the evidence before quoted is very meager, amounting at most to a mere suspicion that

he aided Smith in the making of the whisky. This was a hidden still, located some distance from the house, and Spence may not have known of its existence, or, if he did know, may have had no part in its operation. The motion for a directed verdict as to Spence should have been sustained, and the judgment as to him is reversed, and the cause remanded.

DOYLE, P. J., and MATSON, J., concur.