Argued and submitted December 17, 1985, affirmed May 14, reconsideration denied
July 3, petition for review denied July 29, 1986 (301 Or 445)

# VAUGHAN,
*Appellant,*

*v.*

# TAYLOR et al,
*Respondents.*

### (83-9-16; CA A34513 (Control))

# BRADSTREET et al,
*Appellants,*

*v.*

# TAYLOR et al,
*Respondents.*

### (83-8-460; CA A34517)
### (Cases Consolidated)

718 P2d 1387

Steven L. Maurer, Lake Oswego, argued the cause for appellant Vaughan. With him on the briefs were Peter Glazer, Craig D. Curtright and Maurer & Glazer, P.C., Lake Oswego.

Craig T. Johnson, Lake Oswego, argued the cause for appellants Bradstreet and Cummins. With him on the brief was Buckley, Johnson, Bolen, Berg & Lindley, P.C., Lake Oswego.

Nelson L. Walker, Oregon City, argued the cause for respondents Taylor and Burt & Hagen, P.C. With him on the briefs was Hibbard, Caldwell, Bowerman, Schultz & Hergert, Oregon City.

William H. Stockton, Hillsboro, argued the cause and filed the brief for United Bank of Oregon.

Before Gillette, Presiding Judge, Pro Tempore, and Van Hoomissen and Young, Judges.

GILLETTE, P. J., Pro Tempore.

## GILLETTE, P. J., Pro Tempore

Plaintiffs appeal from judgments for defendants in these consolidated actions for abuse of process, invasion of privacy and related claims. We affirm.

Defendant Taylor is a lawyer and an associate of defendant Burt & Hagen, P.C. Plaintiffs Bradstreet, Cummins and Vaughan are certified public accountants and were formerly partners; Bradstreet and Cummins remained partners after Vaughan withdrew. In June, 1982, defendant Faraca, who is not a party to this appeal, was sued in Multnomah County for breach of a contract to purchase a business. He retained Burt & Hagen to defend the action; Taylor had the primary responsibility for the case. Bradstreet had provided assistance to the seller when Faraca purchased the business. Taylor believed that some of the representations Bradstreet made about the financial condition of the business might be fraudulent. On October 31, 1982, he filed an answer on behalf of Faraca setting out the allegedly fraudulent representations as an affirmative defense to the breach of contract claim. He also counterclaimed against the seller on the basis of Bradstreet's alleged fraud and intended to file a separate fraud action against Bradstreet and his partners.

During his investigation of the case, Taylor learned that Bradstreet might have been in financial difficulties during the time when he was assisting the seller and that, if he were, certain records of the Metropolitan Bank of Oak Grove might reflect those difficulties.[1] On September 3, 1982, he issued a subpoena *duces tecum* to the bank, ordering it to make available for inspection and copying "the collateral file, the regular credit file (Loan file), and historical loan ledger (Historical Loan file) with respect to all loans on which payments were due to Metropolitan Bank from Samuel Robert Bradstreet at any time between June 30, 1980 and Jan. 30, 1981." The subpoena form Taylor used required the recipient to testify as a witness, but Taylor crossed off that portion of the form. He did not notify the plaintiff in the case which he was defending that he had issued the subpoena;

---

[1] The Metropolitan Bank later merged with two other small banks and became the United Bank of Oregon. That bank, which is the remaining defendant, was placed in FDIC receivership in March, 1984, and is presently being liquidated.

neither did he notify Bradstreet, Cummins or Vaughan. He believed that, because the subpoena was for the production of records rather than for a deposition, no notices were required.

The bank, after consulting its attorney, made the material available to Taylor on September 13, 1982, the date stated in the subpoena. Because some of the loans involved were made to the accounting partnership, the files contained financial information concerning Cummins and Vaughan as well as Bradstreet. The bank notified Bradstreet before complying with the subpoena, but it ignored his objection. Taylor later filed an action against Bradstreet, Cummins and Vaughan on Faraca's behalf for fraud and negligence. That case was dismissed as to Vaughan and settled as to the other defendants.

Plaintiffs filed the actions presently before us after Taylor had filed the fraud action on behalf of Faraca against them. They assert that Taylor's act in issuing the subpoena was an abuse of process, that his inspection of the records was an invasion of their privacy and that, in complying with the subpoena, the bank invaded their privacy and violated its fiduciary duty to keep their records private. Before trial, the court segregated the issues of the propriety of the subpoena under the Oregon Rules of Civil Procedure and the discoverability of the materials that the bank produced. After a trial of those legal issues to the court, it held that Taylor had acted properly and that the materials were discoverable. It treated those determinations as decisive of the case and entered judgments for defendants. We first consider the correctness of the rulings because, as the case has been presented to us, the trial court's understanding of the effect of its holdings is correct.[2]

---

[2] Defendants' acts cannot have improperly invaded plaintiffs' privacy or violated the bank's fiduciary duties if Taylor followed the correct procedures and if the material the bank produced was discoverable. The requirements of a lawsuit of the kind contemplated by Taylor are necessarily superior to the kind of privacy interests plaintiffs assert. It may be that an abuse of process claim would still be viable but, in both their briefs and at oral argument, plaintiffs argued in support of that claim only on the theory that Taylor's actions were improper. Although their complaint would justify it, they do not argue that they could prove an abuse of process claim by showing that Taylor used *proper process* for an *improper purpose. See Larsen v. Credit Bureau,* 279 Or 405, 408, 568 P2d 657 (1977). Although they argue that the trial court's holdings do not justify its judgment against them, that argument is based on unnamed and undescribed issues of fact which supposedly remain. We find nothing in this argument which we need to discuss.

ORCP 43 provides a method by which a party may require another *party* to produce documents for inspection and copying. However, there is no comparable way to require a *non-party* to produce documents for discovery purposes. The closest alternative is the subpoena *duces tecum* provided in ORCP 55, but the provisions are not identical. A subpoena *duces tecum* is, in some respects, more cumbersome than is a request for production. Taylor's attempt to equate the two, although understandable, was incorrect.[3]

■   ORCP 55A provides for a subpoena to require a person to come to a particular place at a particular time and to testify as a witness. ORCP 55B adds that the

"subpoena *may also* command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein * * *." (Emphasis supplied.)

The clear implication is that the obligation to produce is in addition to, not instead of, the obligation to testify. That is how the federal courts have treated the identical language of FRCP 45(b). *See F.T.C. v. Gibson Products of San Antonio, Inc.,* 569 F2d 901, 905-906 n 14 (5th Cir 1978); *McLean v. Prudential Steamship Co.,* 36 FRD 421 (ED Va 1965); 8 Wright & Miller, *Federal Practice and Procedure,* §§ 2108, 2114 (1970); 9 Wright & Miller, *supra,* § 2455 (1971). A subpoena which does not require the recipient to testify will be quashed if the person receiving it moves to do so.

■   The proper procedure to discover documents in the hands of a non-party is to subpoena the non-party to a deposition, giving appropriate notice to all parties, and to include in the notice a designation of the materials which the subpoena requires the witness to produce. ORCP 39C(1); ORCP 55F(1).[4] Failure to give the notice will make the service of the subpoena improper and, again, the court may quash it. *Ghandi v. Police Dept. of City of Detroit,* 74 FRD 115, 118 (ED Mich 1977). It may be that the oral part of the deposition will

---

[3] The relevant Oregon rules are taken almost verbatim from the Federal Rules of Civil Procedure. We will therefore rely primarily on cases and treatises construing the corresponding federal rules in resolving the procedural issues in this case. *See Taylor v. Baker,* 279 Or 139, 141-42 n 2, 566 P2d 884 (1977); *Henderson-Rubio v. May Dept. Stores,* 53 Or App 575, 583 n 5, 632 P2d 1289 (1981).

[4] The "person" subpoenaed may be an organization, which must designate the individuals who will respond. ORCP 39C(6).

consist only of the witness identifying the documents, but the person issuing the subpoena must intend to take some testimony. *See F.T.C. v. Gibson Products of San Antonio, Inc., supra.* The trial court erred in holding that Taylor followed the proper procedure.

That the subpoena was irregular and subject to being quashed[5] does not resolve the case. The problems were matters of form only, and Taylor could have cured them by issuing a new and proper subpoena, with appropriate notice, if the bank had moved to quash the first one. ORCP 55F(1); *see Ghandi v. Police Dept. of City of Detroit, supra.* Plaintiffs, therefore, cannot have been damaged by the irregularity. Rather, in order to prove any of their claims, they must prove that the bank gave Taylor some material which was not discoverable under a procedurally proper subpoena requiring production of the same documents which the actual subpoena required. We turn now to that question.[6]

The criteria for what may be compelled under a subpoena *duces tecum* for a discovery deposition are the same as for other forms of discovery. ORCP 55F(1). A party may inquire as to any non-privileged matter

"which is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any other party * * *." ORCP 36B (1).

That the material sought is inadmissible is not a ground for

---

[5] It is not clear whether the plaintiff in the case in which the subpoena was issued or the plaintiffs in this case would have had standing to move to quash it. A party may not seek a protective order to protect the rights of a witness unless the party believes that its own rights are jeopardized. 8 Wright & Miller, *supra*, § 2035. Plaintiffs were neither parties to the previous case nor the persons subpoenaed. However, the bank had standing to move to quash the subpoena as irregular. We consider below, *see* n 6, whether it would have had standing to assert plaintiffs' interest in keeping their financial records confidential in the face of a procedurally proper subpoena.

[6] Plaintiffs argue that the material was not discoverable, because it was confidential financial information which the bank had only as their agent. Although that description of the information seems incorrect—the records are those of the bank and contain personal financial information of plaintiffs because the bank needed it for its own purposes—we will assume that, as plaintiffs allege in their complaint, the bank had an implied contractual or fiduciary duty not to disclose that information except under proper legal compulsion. *See Peterson v. Idaho First National Bank,* 83 Idaho 578, 367 P2d 284 (1961). We will further assume that the bank had standing to seek a protective order by asserting plaintiffs' rights against a proper subpoena even if plaintiffs did not have standing. These are issues which the trial court did not decide and which are not briefed on appeal.

objection if its discovery appears reasonably calculated to lead to the discovery of admissible evidence. A request for discovery must often be couched in broad terms, because the significance of the material cannot always be determined until it has been inspected.[7]

■ Taylor's request covered essentially all the bank's records relating to loans to Bradstreet on which payments were due between June 30, 1980, and January 30, 1981. The exhibits in the record include the entire files as they existed when the FDIC closed the bank. Because no one could remember what records, other than those Taylor photocopied, were actually produced, we will assume that Taylor saw all the records dated September 13, 1982, or before; that is, that he saw all that he asked to see. The material which directly concerns Bradstreet was clearly relevant to Taylor's claim that Bradstreet made fraudulent representations to Faraca because Bradstreet was in financial difficulties. The loans to which that material related were made to the accounting partnership, and the files therefore include considerable information on Cummins' and Vaughan's financial situations. Because of the large number of roll-over loans, all the material relating to Bradstreet was both within the terms of the subpoena and was discoverable. The court did not err in entering judgment for the bank on Bradstreet's claims against it.

The claims of Vaughan and Cummins are not quite so easily decided. There is no assertion that they were involved in Bradstreet's alleged fraud or that information about their financial situation would be directly relevant to any claim or defense in the Faraca case or related cases. In addition, the subpoena did not request information relating solely to them. Some of the material concerning Vaughan and Cummins was inevitably present, because the bank kept its records in such a way that it was not possible to separate information concerning Bradstreet from that concerning Vaughan and Cummins. Other material, such as credit reports and personal financial

---

[7] "The scope of discovery has been made very broad and the restrictions imposed upon it are directed chiefly at the use of, rather than the acquisition of, the information discovered." 8 Wright & Miller, *supra*, § 2001.

statements, could have been deleted before disclosure. However, all the documents were both within the terms of the subpoena and discoverable. Although information about Vaughan and Cummins does not directly concern Bradstreet's personal financial situation, it does relate to the financial strength of the partnership of which he was a member and to the likelihood that he would be personally liable for most or all of the partnership's debts to the bank in case of default. If Vaughan and Cummins were in good financial condition, that fact would decrease Bradstreet's motive to defraud Faraca; if they were in poor financial condition, Bradstreet could not rely on them to carry their share of the partnership's liability. His motive to defraud Faraca in order to earn a fee from the seller of the business would then increase. The court correctly held that all of the material which the bank may have disclosed was discoverable.

Affirmed.