ALVA STATE BANK AND TRUST COMPANY, Petitioner,

v.

The Honorable Michael R. DAYTON, Associate District Judge, Respondent.

No. 70097.

Supreme Court of Oklahoma.

April 26, 1988.

Craig L. Box, Douglas L. Jackson, Gungoll, Jackson & Collins, P.C., Enid, William P. Warden, Linn & Helms, Oklahoma City, for petitioner.

Hall, Estill, Hardwick, Gable, Golden & Nelson, Kent L. Jones, Donald L. Kahl, Tulsa, Richard R. Downer, Alva, Rick M. Bramlett, Medford, for defendants.

## MEMORANDUM OPINION

PER CURIAM:

Alva State Bank seeks to prohibit the trial judge from enforcing his discovery order compelling Bank to produce and disclose loan records of customers who are *not* parties to the underlying lawsuit. We

assume original jurisdiction and, for reasons set forth below, issue writ of prohibition preventing any further proceeding under this discovery order.

This action arose out of a suit on promissory notes and mortgage by petitioner against Beulah Sperry and others to foreclose the mortgage and set aside an allegedly fraudulent conveyance. The defendants argued that Sperry was only an accomodation maker and that the notes and mortgage were obtained by fraud and misrepresentation. Defendants filed a counterclaim against the bank sounding in fraud.

To obtain proof of a common scheme or design in support of their claim of fraud, defendants sought to compel Bank to produce records of other customers who had been required to secure additional capital for existing loans. These customers are not parties to this action. The disclosure of their personal financial records would be without notice to them and without their consent.

The order challenged here provided that the bank should produce for in camera inspection by the court, loan files of non-party borrowers covering real property where the bank required additional collateral after January 1, 1985. At the time of inspection, the trial court will determine the relevancy of any inFormation therein and then release the relevant documents to the attorneys for their use and information.

These records are clearly confidential and Bank's customers have a reasonable expectation of privacy in them.

Our Financial Privacy Act, 6 O.S.1981, §§ 2201, et seq., sets out the exclusive lawful means of obtaining records such as these. The legislatively announced public policy of that Act, found in the short title, § 2201, is to "maintain the privacy and confidentiality of the records of customers of financial institutions."

A financial institution, such as this petitioner, is restricted as to the circumstances under which it may release records. Section 2203 provides:

"A financial institution is prohibited from giving, releasing or disclosing any financial record to any government authority unless:

(a) it has written consent from the customer for the specific record requested; or

(b) it has been served with a subpoena issued pursuant to [Section 2204] for the specific record requested."

Defendants contend that because the underlying litigation involves private parties, the Financial Privacy Act is inapplicable as there is no "government authority" attempting to obtain the records. For this same reason, respondents argue that no expectations of privacy exist here or are protected by the constitution.

In so arguing, defendants misconstrue the reality of these circumstances, for it is precisely a government authority—a trial judge—whose order places these records in jeopardy. As elsewhere, "government authority" in this act, § 2202(c), means:

"... any agency, board, commission or *department of the State of Oklahoma,* or any officer, employee, representative, or agent thereof." (Emphasis added)

See, Art. 4, Okla. Const. § 1. See also, *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

Section 2204 sets forth the proper, lawful and exclusive procedure for obtaining a customer's bank records. Compliance with that procedure requires properly issuing subpoenas, giving notice to customers and affording them an opportunity to be heard to protest the disclosure of their records.

In ordering the production of records in a manner other than that provided by statute, the trial court acted in a manner not authorized by, and contrary to, law. Respondent is attempting to exercise judicial power not granted by law and lacks the authority to enter the challenged order.

ORIGINAL JURISDICTION ASSUMED. WRIT ISSUE.

HARGRAVE, V.C.J., and LAVENDER, SIMMS, OPALA, ALMA WILSON and SUMMERS, JJ., concur.

KAUGER, J., specially concurring.

HODGES, J., dissents.

DOOLIN, C.J., disqualified.

KAUGER, Justice, specially concurring:

The Oklahoma Financial Privacy Act, 6 O.S.1981 § 2201, *et. seq.*, provides the procedure by which a governmental authority, in this case a judge, may require production of bank records. I agree with the majority that these records are clearly confidential, and that bank customers who are not parties to the lawsuit have a reasonable expectation of privacy in them. (*These are private citizens whose records have been requested for inspection solely on the basis that they chose to do business with Alva State Bank and Trust Company.*)

Congress has specifically proscribed governmental access to a person's financial records except under limited circumstances.[1] The Right to Financial Privacy Act limits government access to financial records of any customer from a financial institution unless: (1) the customer authorizes the disclosure; (2) the records are disclosed in response to an administrative subpoena or summons; (3) the records are disclosed in response to a search warrant; (4) disclosed in a judicial subpoena; or (5) in response to a formal written request.[2] Even records subject to a judicial subpoena are limited to subpoenas authorized by law where the records are part of a legitimate law enforcement inquiry, and the subpoena has been served upon the customer.[3]

The Oklahoma Legislature has similarly limited the disclosure or release of financial records through the Oklahoma Financial Privacy Act.[4] However, there is a more fundamental source of protection than the Financial Privacy Act—the Okla. Const. art. 2, § 30.[5]

Historically, the power to search was used to restrict the power of the English press, and in 1538, broad search powers were bestowed by the Star Chamber, and later Parliament, to seize published materials. It was not until an English justice was impeached for issuing general warrants, that Parliament, in 1695, recognized that the public had the right to be protected. However, judicial recognition of this limitation on the abuse of general warrants, was not forthcoming until *Wilkes v. Wood*, 19 Howell's State Trials 1153 (1763) and *Entick v. Carrington*, 19 Howell's State Trials 1029 (1765). In *Carrington*, the victim of such a search brought a trespass action. The court, refusing to find in favor of the Crown, held that to do so would subject

---

1. Title 12 U.S.C. § 3402 (1978) provides:
   "Except as provided by section 3403(c) or (d), 3413, or 3414 of this title, no Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution unless the financial records are reasonably described and—
   (1) such customer has authorized such disclosure in accordance with section 3404 of this title;
   (2) such financial records are disclosed in response to an administrative subpena or summons which meets the requirements of section 3405 of this title;
   (3) such financial records are disclosed in response to a search warrant which meets the requirements of section 3406 of this title;
   (4) such financial records are disclosed in response to a judicial subpena which meets the requirements of section 3407 of this title; or
   (5) such financial records are disclosed in response to a formal written request which meets the requirements of section 3408 of this title."

   The federal act does not apply to the facts presented by the instant case because of the definition that 12 U.S.C. § 3401(3) gives to governmental authority. Section 3401(3) provides:
   " 'Governmental authority' means any agency or department of the United States, or any officer, employee or agent thereof;"

2. Title 12 U.S.C. § 3402 (1978), id.

3. See 12 U.S.C. § 3402(4) (1978), see note 2, supra, and 12 U.S.C. § 3407(1) and (2) (1978).

4. Title 6 O.S.1981 § 2201, *et. seq.*

5. Okla. Const. art. 2, § 30 provides:
   "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

every secret cabinet and bureau in the kingdom to arbitrary search and seizure.[6]

Traditionally, Oklahomans have zealously guarded their right to privacy and their protection against unreasonable searches or seizures.[7] The Honorable J.K. King of Newkirk, President Protempore of the Oklahoma Constitutional Convention acknowledged that the reason for inserting a bill of rights into the constitution was: "to protect the individual in the enjoyment of his life, his liberty and his property."[8] Thereafter, the Convention adopted art. 2, § 30 guaranteeing to the people of Oklahoma the right to be secure in their papers. It is precisely the type of invasion at issue here that this provision was intended to prohibit.

Before being named to the United States Supreme Court, Justice Field described the importance of the right to be free from the unwarranted invasion into one's personal papers:

"Of all the rights of the citizen, few are of greater importance or more essential to his peace and happiness than the right of personal security, and that involves, not merely protection of his person from assault, but exemption of his private affairs, books, and papers from the inspection and scrutiny of others. Without the enjoyment of this right, all other rights would lose half their value."[9]

States, in the exercise of their sovereign power, may afford more expansive individual rights and liberties than those conferred by the United States Constitution.[10] State statutes or state constitutions which afford greater rights than the federal constitution must be determined by following state law. It is only when state law provides less protection that the question must be determined by federal law. The people of this state are governed by the Oklahoma Constitution, and when it grants a right or provides a principle of law or procedure beyond the protections supplied by the federal constitution, it is the final authority.[11] This is so even if the state constitutional provision is similar to the federal constitution. The United States Constitution provides a floor of constitutional rights—state constitutions provide the ceiling.[12]

In *Peterson v. Idaho First Nat'l Bank,* 83 Idaho 578, 367 P.2d 284, 92 A.L.R.2d 891 (1961), the Idaho Supreme Court recognized the right of a customer to be secure in his/her business papers as one of the inherent and fundamental precepts of the banking relationship. In reviewing decisions by various courts, the Court recognized the Fourth Amendment's guarantee of "the right of the people to be secure in their ... papers ..." and that this right extended to the inviolate status of bank accounts against unreasonable search.[13]

The Idaho opinion cites a number of cases which have come to the same result relying either upon: constitutional guarantees;[14] the existence of a fiduciary rela-

**6.** See 1 LaFave, "Search and Seizure, A Treatise on the Fourth Amendment," pp. 3–4, § 1.1 (2nd Ed. 1987); R. Davis, *Federal Searches and Seizures,* Ch. 1, pp. 4–5 (Charles C. Thomas Co. 1964).

**7.** *Turner v. City of Lawton,* 733 P.2d 375, 382 (Okla.1986). See also *Hughes v. State,* 522 P.2d 1331, 1334 (Okla.Crim.1974).

**8.** A. Ellis, *A History of the Constitutional Convention of the State of Oklahoma,* p. 58 (Economy Printing Co. 1923).

**9.** In the matter of the application of the *Pacific Railway Comm.,* 32 F. 241, 250 (N.D.Ca.1887).

**10.** *Turner v. City of Lawton,* see note 7 at 378–79, supra. The Oklahoma Constitution also provides greater rights than those secured by the United States Constitution in the arena of parental rights, *In the matter of A.E., E.E., E.E., R.E., A.E., and E.E. v. Oklahoma,* 743 P.2d 1041, 1046–48 (Okla.1987).

**11.** *Turner v. City of Lawton,* see note 7 at 379, supra; In re *McNaught,* 1 Okla.Crim. 528, 99 P. 241, 254 (1909).

**12.** See, *Stephany v. Wagner,* 835 F.2d 497, 500 (3rd Cir.1987).

**13.** *Peterson v. Idaho First Nat'l Bank,* 83 Idaho 578, 367 P.2d 284, 289, 92 A.L.R.2d 891, 898 (1961).

**14.** *Zimmermann v. Wilson,* 81 F.2d 847, 849 (3rd Cir.1936); *Brex v. Smith,* 104 N.J.Eq. 386, 146 A. 34, 36 (1929).

tionship;[15] the existence of an implied contract between a banker and its customer that the banker will not divulge to third persons financial facts without consent;[16] or because the relationship is one of principal and agent.[17] The Third Circuit has also recognized the importance of duties of confidentiality and protection of private papers in a financial institution's dealings with customers.[18]

The importance of a person's security in personal papers is subordinate to the government's right to inspect in certain instances.[19] For example, an Internal Revenue agent may be empowered to inspect records that would be inaccessible to a person off the street interested in another's private dealings.[20] However, even the government's rights are limited and may not be extended to situations where a pub-

lic official acts to cause a breach of trust or illegally acts and injuriously affects individual property rights.[21]

The right to privacy has been defined as the "claim of individuals, groups, or institutions to determine for themselves when, how, and to what extent information about them is communicated to others."[22] The guarantee of security found in art. 2, § 30[23] of the right of the people to be secure in their papers encompasses the people's right to preserve confidentiality in their personal papers.[24] This security, which must be strictly construed, is a fundamental, constitutional right applicable to both civil and criminal actions.[25]

The Okla. Const. art. 2, § 30 constitutes the bona fide, separate, adequate and independent grounds upon which I rest my

---

**15.** *United States v. First Nat'l Bank of Mobile,* 67 F.Supp. 616, 624 (S.D.Ala.1946).

**16.** *Brex v. Smith,* see note 14, supra.

**17.** *Crawford v. West Side Bank,* 100 N.Y. 50, 2 N.E. 881 (1885).

**18.** *Peoples Bank of the Virgin Islands v. Figueroa,* 559 F.2d 914, 917 (3rd Cir.1977). It has been recognized that a bank may have standing to move to quash, as irregular, a subpoena duces tecum issued to it requiring production of confidential financial information where the bank is not a party to the action but is considered the agent of its customer. *Vaughan v. Taylor,* 79 Or.App. 359, 718 P.2d 1387, 1390 (1986).

Apparently, the right to be secure in ones papers need not be premised on property rights to allow protection. *United States v. Freie,* 545 F.2d 1217, 1223 (9th Cir.1976). All that is required is that the expectation be reasonable. *Marshall v. Wait,* 628 F.2d 1255, 1258 (9th Cir. 1980); *United States v. Freie,* supra. In *Djowharzadeh v. City Nat'l Bank and Trust Co.,* 646 P.2d 616, 620 (Okla.App.1982), the duty of confidentiality between a bank and its customers was recognized. The Court of Appeals held that the right existed traditionally and continued to exist "if not in the law books, at least in the mind of the public in general and within the banking community in particular." Implicit in the characterization of the bank-customer relationship is what any depositor or customer of a financial institution reasonably expects. *Djowharzadeh v. City Nat'l Bank and Trust Co.,* supra at 616–20. The relationship between a bank and its customer has been analogized to that of the

doctor-patient relationship. *Humphers v. First Interstate Bank,* 298 Or. 706, 696 P.2d 527–28 (1985). Just as a patient expects a doctor to prescribe treatment without disclosing the illness, a depositor reasonably expects that the existence of personal financial health or the lack thereof will remain confidential information.

**19.** *Brex v. Smith,* see note 14, 146 A. at 35, supra.

**20.** *United States v. First Nat'l Bank of Mobile,* see note 15, supra.

**21.** *Brex v. Smith,* see note 14, 146 A. at 35, supra.

**22.** Hufstedler, "The Directions and Misdirections of a Constitutional Right to Privacy," 43 O.B.J. q–376, 379 (1972).

**23.** Okla. Const. art. 2, § 30, see supra note 6.

**24.** United States Const. Amend IV, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Okla. Const. art. 2, § 30, see supra note 5.

**25.** *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930, 935–36 (1967); *Turner v. City of Lawton,* see note 7 at 381, supra; *Castleberry v. State,* 678 P.2d 720, 722 (Okla.Crim.1984); *Gore v. State* 24 Okla.Cr.

conclusion.[26] The expectation of freedom from unwarranted encroachment into private papers arises from the rights guaranteed by this provision. Failure to protect that expectation in a situation where the proposed infringement is directed at nonparties to an adversarial proceeding would do more harm to those affected than good to the parties to the suit.[27] The right of the people to be secure in their papers may not be denied because of the possibility that the parties to the civil action may glean some helpful information from the requested records. The constitutional protection guaranteed to the people must prevail.

---

394, 218 P. 545, 548 (1923). See also, Hufstedler, note 23 at q–379, supra.

**26.** *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983); *Turner v. City of Lawton,* see note 7 at 381, supra; *New Jersey v. Haskell,* 100 N.J. 469, 495 A.2d 1341, 1347 (1985).

**27.** *Turner v. City of Lawton,* see note 7, supra; *Hess v. State,* 84 Okla. 73, 202 P. 310, 314–16 (1921); *Youman v. Commonwealth,* 189 Ky. 152, 224 S.W. 860, 866, 13 A.L.R. 1303, 1313 (1920).