OSCN Found Document:PARKER, et al., v. VALLIANCE BANK

 

 
 PARKER, et al., v. VALLIANCE BANK2026 OK CIV APP 5Case Number: 121526Decided: 01/30/2026Mandate Issued: 02/26/2026THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2026 OK CIV APP 5, __ P.3d __

 

PHILLIP R. PARKER, an individual; KI LYNN PARKER, an individual;
PHILLIP R. PARKER REVOCABLE TRUST DATED NOVEMBER 11, 2011;
KI LYNN PARKER REVOCABLE TRUST DATED NOVEMBER 11, 2011;
PHILLIP R. PARKER, DDS, MS, MS, P.C.; and OLD WELL, LCC, Plaintiffs/Appellants,
vs.
VALLIANCE BANK, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ALETIA HAYNES TIMMONS, TRIAL JUDGE

AFFIRMED

Brad Miller, J. Logan Johnson, Jami Rhoades Antonisse, Shawna L. Landeros, MILLER JOHNSON JONES ANTONISSE & WHITE, PLLC, Oklahoma City, Oklahoma, For Plaintiffs/Appellants

Joshua C. Greenhaw, MEE HOGE PLLP, Oklahoma City, Oklahoma
and
Joe E. White, Jr., Charles C. Weddle III, WHITE & WEDDLE, P.C., Oklahoma City, Oklahoma, For Defendant/Appellee

JOHN F. FISCHER, JUDGE:

¶1 Appellants Phillip R. Parker, the Phillip R. Parker Revocable Trust, Ki Lynn Parker, the Ki Lynn Parker Revocable Trust, Phillip R. Parker, DDS, MS, MS, P.C.; and OLD WELL, LCC (the Parkers unless otherwise stated) appeal the judgment in favor of Valliance Bank. This case arises out of the Bank's disclosure of its customer, Greenway Park, LLC's, financial records pursuant to a subpoena issued in a separate case. The Parkers are related in various ways to Greenway Park and maintain that the Bank's production of Greenway Park's financial records was negligent, violated their rights guaranteed by the Oklahoma Financial Privacy Act, 6 O.S.2021 §§ 2201

BACKGROUND

¶2 The facts relevant to the disposition of this appeal are not in dispute and arise from at least three previous legal proceedings, summarized as follows:

¶3 In 2012, Greenway Park, LLC executed a promissory note with Valliance Bank in the principal sum of $386,322. The members of Greenway Park were the Phillip R. Parker Revocable Trust and the Ki Lynn Parker Revocable Trust. The Note was secured by a mortgage on Lots 2 and 7 of Block 1, Greenway Park Addition located in Cleveland County, Oklahoma (the Real Property). Phillip Parker and his trust personally guaranteed the Note. The Note was renewed on April 15, 2015, and was increased to a principal sum of $382,438.80. The Mortgage was likewise modified and recorded on April 27, 2015. On May 15, 2015, a judgment lien in the principal sum of $500,000 was recorded in Cleveland County against Greenway Park and in favor of Rodney Thornton and R.T. Properties, LLC (Thornton). 

¶4 On September 1, 2016, while Greenway Park's bankruptcy case was pending, the Bank sold and assigned the Note and Mortgage to DMWP, LLC. Christopher Parker, Phillip Parker's brother, was DMWP's manager and sole member. DMWP was substituted in the Bank's place as a secured creditor in the bankruptcy case and sought to lift the automatic stay "for the purposes of exercising its rights under state law relating to the [Real Property]." Thornton likewise sought relief from the stay for the same purpose. Although Thornton's judgment lien was inferior to DMWP's mortgage, Thornton also pursued satisfaction of its judgment against other lots in the Greenway Park addition which were unencumbered by DMWP's mortgage. The bankruptcy court entered its order lifting the stay and noting that the bankruptcy trustee had abandoned the Real Property securing the Bank's Note.

¶5 In July 2017, DMWP filed suit in Cleveland County District Court to foreclose on the Mortgage. DMWP named Greenway Park and Thornton as defendants in this Foreclosure Suit. 

¶6 On February 19, 2018, attorney Ward issued a subpoena to the Bank (the Thornton subpoena). Ward did not serve a copy of the Thornton subpoena on the bankruptcy trustee or the Parkers. The Thornton subpoena requested that the Bank representative appear for deposition and produce various documents relating to Greenway Park's banking relationship with the Bank, including (1) documents related to the Note and Mortgage, personal guarantees of the Note, and the sale and assignment of the Note and Mortgage to DMWP; (2) documents exchanged with any person concerning DMWP's investment in the Note, any discussions regarding the value of the purchase, and the original source of funds used to pay the Bank for the Note and Mortgage; (3) documents concerning anyone else's interest in the purchase of the Note or the assignment of the Mortgage, and any documents evaluating the fair market value of the Note and Mortgage and the collateral securing the Note and Mortgage; and (4) any other documents concerning Greenway Park. Ward also issued subpoenas to Phillip and Ki Lynn Parker requesting their depositions and the production of some of the same documents requested in the Thornton subpoena.

¶7 On February 23, 2018, the Bank moved to quash the Thornton subpoena. On the same day, Phillip and Ki Lynn Parker also filed motions to quash the subpoenas issued to them. Thornton filed an objection to DMWP's previously filed motion for protective order as well as a response to the Parkers' motions to quash the subpoenas issued to them. Included in Thornton's response to the Parkers' motions to quash was a copy of the Thornton subpoena. The Parkers' attorney at the time, Joe Hampton, confirmed that he received Thornton's response to all three motions on the afternoon of March 5, 2018. He testified at trial that although he read the body of the responses, he did not review the exhibits attached thereto, including the Thornton subpoena for the Greenway Park records.

¶8 DMWP's motion for protective order and the Parkers' motions to quash were heard on March 5, 2018. The following minute was entered in the district court docket on March 6, 2018:

Matter comes on for continuation of [DMWP's] MSJ & motion for PO & non-party Parker motion to quash. Parties present arguments. Based upon the same, the court denies [DMWP's] motion for PO & motion to quash as to Philip Parker & [Valliance Bank representative] Matt Clouse. Matter set for further MSJ hearing on May 14, 2018 at 9:00 a.m.

The minute reflects that separate counsel on behalf of DMWP, Thornton, and the Parkers appeared at the March 5, 2018 hearing.

¶9 There is no indication in the record that counsel for the Bank was present at this hearing or that there was a formal disposition of the Bank's motion to quash the Thornton subpoena. Nonetheless, DMWP's motion for a protective order to prevent the deposition of Bank representative Clouse was denied. Joe Hampton, as counsel for Phillip and Ki Lynn Parker, was a party to correspondence scheduling the Bank's deposition. In preparation for that deposition and the accompanying document production, Clouse compiled the documents he believed were responsive to the Thornton subpoena (the Documents). Clouse brought the Documents to the deposition, and they were provided to counsel for DMWP and Thornton, who were present at the deposition along with counsel for the Bank.

¶10 On the day following Clouse's deposition, attorneys Miller and Johnson, the Parkers' new counsel, sent a letter to the Foreclosure Suit parties, stating that they had been retained by the Parkers and demanding that any recipients of the Documents cease and desist from any review of the Documents. According to the Parkers, Thornton refused to return the Documents and instead later filed a counterclaim in the Foreclosure Suit against DMWP, and third-party claims against Phillip and Ki Lynn Parker, their revocable trusts, and Christopher Parker. That pleading alleged a conspiracy between the Parkers and their revocable trusts, DMWP and Christopher Parker. Thornton asserted that these parties conspired to foreclose on the Real Property despite the absence of any then-existing default, for less than a fair market price and without resort to enforcement of the personal guarantees of Phillip Parker and his trust. According to Thornton, Greenway Park's bankruptcy filing, the assignment of the Note and Mortgage to DMWP, and DMWP's foreclosure on the Real Property constituted a fraudulent attempt to deprive Thornton of any payment toward the judgment lien.

¶11 The Parkers contend that disclosure of the Documents during Clouse's deposition resulted in Thornton's ultimate pursuit of the claims against them in the Foreclosure Suit, causing them to incur in excess of $500,000 in damages. 

¶12 The Parkers assert several grounds for error, four of which have been preserved for appellate review: (1) the trial court abdicated its role to interpret the Oklahoma Financial Privacy Act as a matter of law, or alternatively, applied the Act in ways contrary to its plain language and necessary application; (2) the trial court's findings of fact were beyond the scope of admissible and considerable evidence or were otherwise speculative, leading it to conclude in error that either the Documents were properly produced, or that their production was harmless; (3) the trial court erred in finding the Bank owed no duty of confidentiality to the Parkers under the factual circumstances of the case, and owed no duty to notify the Parkers about the Thornton subpoena; and (4) the trial court misconstrued and/or ignored the extent and nature of their damages, and erred in finding they failed to mitigate their damages.

STANDARD OF REVIEW

¶13 This appeal requires the construction and interpretation of the Oklahoma Financial Privacy Act, 6 O.S.2021 § 2201et seq. Statutory interpretation presents a question of law. McIntosh v. Watkins, 2019 OK 6441 P.3d 1094Heffron v. Dist. Ct. of Oklahoma Cnty., 2003 OK 7577 P.3d 1069Lee v. Bueno, 2016 OK 97381 P.3d 736

¶14 The parties cite Margaret Blair Trust v. Blair, 2016 OK CIV APP 47378 P.3d 65Blair was an equitable case in which the standard of review required the appellate court to review all of the evidence and affirm the district court's findings of fact unless against the clear weight of the evidence. Story v. Hefner, 1975 OK 115540 P.2d 562Bradley v. Clark, 1990 OK 73804 P.2d 425

ANALYSIS

I. The Greenway Park Documents

¶15 Testimonial and documentary evidence established that in June of 2012, the Bank entered into a business loan agreement with Greenway Park, a real estate holding company. Because Greenway Park did not have any income, and as part of the underwriting process for its loan, the Bank collected asset information on Greenway Park's members, the Phillip R. Parker Revocable Trust and the Ki Lynn Parker Revocable Trust, and collected asset information on Phillip Parker as personal guarantor of the Greenway Park loan. The Bank also analyzed the financial statements and income and assets of Ki Lynn Parker. The underwriting process also included a financial analysis of Phillip R. Parker, DDS, MS, MS, P.C. and Old Well, LLC. The dental practice was Phillip Parker's primary source of personal income, but it was also a borrower at the Bank on other loans. Old Well owned the real property on which Phillip Parker conducted his dental practice and had a separate construction loan with the Bank. From this information, Bank employees generated internal credit memos and annual reviews discussing the creditworthiness of its borrower and guarantors, their sources of income and revenue, and the value of their assets. These credit memos and annual reviews summarized the Parkers' financial statements to determine their "global cash flow to show that they could repay the debt."

¶16 The Bank's representative testified at trial that these documents were included in the Documents produced at deposition in the Foreclosure Suit because they were contained in the Bank's Greenway Park loan file and were requested by the Thornton subpoena. Based on this evidence, the district court found that the Documents were contained in the Bank's Greenway Park loan file and that those Documents were produced in response to the Thornton subpoena. This factual conclusion is undisputed and provides the context for proper analysis of the Parkers' arguments in this appeal.

II. Negligence and the Duty of the Bank

¶17 The Parkers' tort claim against the Bank is founded on production of the Documents at the deposition in the Foreclosure Suit. "In tort jurisprudence, liability is based upon the existence of a legal duty attached to a particular relationship between the parties." Hensley v. State Farm Fire and Cas. Co., 2017 OK 57398 P.3d 11Brewer v. Murray, 2012 OK CIV APP 109292 P.3d 41

¶18 Where the courts recognize a legal duty, the duty owed is "that of a reasonably prudent person under the same or similar circumstances." Mansfield v. Circle K. Corp., 1994 OK 80877 P.2d 1130Id. We adopt that standard here because failure to comply with the Oklahoma Financial Privacy Act is the essence of the Parkers' tort claim. "When courts adopt the statutory standard for a cause of action for negligence, the violation of the statute is said to be negligence per se." Id.

¶19 The Financial Privacy Act "sets out the exclusive lawful means" of obtaining a customer's financial record. Alva State Bank and Tr. Co. v. Dayton, 1988 OK 44755 P.2d 6356 O.S.2021 § 2202

¶20 When applicable, the Act prohibits a financial institution "from giving, releasing, or disclosing any financial record to any government authority unless . . . (b) it has been served with a subpoena issued pursuant to [section 2204] for the specific record requested." 6 O.S.2021 § 2203Alva State Bank and Tr. Co. v. Dayton, 1988 OK 44755 P.2d 6356 O.S.2021 § 2202

A court of competent jurisdiction . . . may issue a subpoena for a customer's financial record only if such subpoena is authorized by law. Said subpoena shall specify what financial record is sought.

6 O.S.2021 § 2204

¶21 In this case, the Thornton subpoena was issued by counsel for a party in the Foreclosure Suit on behalf of the district court. See 12 O.S.2021 § 2004.1See 5 O.S. appx. 1, Art I, § 2. Consequently, the Thornton subpoena was issued by a "government authority or any officer . . . thereof" as required by section 2203(b).

¶22 Nonetheless, the Bank was prohibited from releasing its customer's financial records "until the government authority seeking the records certifies in writing that it has complied with the applicable provisions of the Financial Privacy Act." 6 O.S.2021 § 2208

¶23 Section 2204(B) of the Act also provides: "A copy of the subpoena shall be served on the customer or mailed to his last-known address on or before the date the subpoena is served on the financial institution." Subsections (B) through (E) of Section 2204 set forth the Act's notice and challenge procedures. These procedures grant the customer fourteen days from service to file a motion to quash premised upon any of the grounds set forth in the statute. The failure of the customer to file a motion to quash within the fourteen-day period constitutes a waiver of any right to object to the release of the financial information sought in the subpoena. 6 O.S.2021 § 2204

¶24 The district court determined that the Thornton subpoena was not required to be served on Greenway Park because it was a party to the Foreclosure Suit. The district court relied on section 2204(G) of the Act: "The notice and challenge procedures provided for in this section shall not apply when the financial records of the customer: 1. Are sought pursuant to a subpoena in connection with litigation to which the customer is a party . . . ." 

¶25 The purpose of Oklahoma's Financial Privacy Act is to "maintain the privacy and confidentiality of the records of customers of financial institutions." 6 O.S.2021 § 22016 O.S.2021 § 2208

¶26 But proving that the Bank violated the Financial Privacy Act does not establish the Parkers' tort claim. "A particular tort action is based upon whether the particular defendant owes a legal duty to the particular plaintiff." Hensley v. State Farm Fire and Cas. Co., 2017 OK 57398 P.3d 11Mansfield v. Circle K Corp., 1994 OK 80877 P.2d 1130

¶27 But that is not the duty the Parkers allege that the Bank breached. The Documents produced included only documents from Greenway Park's loan file. The Parkers have not argued that any of those Documents were unlawfully obtained by, or not properly in the possession, of the Bank. To the extent that some of the Documents in the Greenway Park loan file included personal financial records of the Parkers, their Trusts, Phillip Parker's dental practice, or Old Well, those documents were voluntarily provided by those Bank "customers" to obtain financing for another Bank "customer," Greenway Park. Although the Act required the Bank to obtain a certificate of compliance from the issuer of the Thornton subpoena before producing Greenway Park's documents, the Act did not require the Bank to segregate and withhold from production documents lawfully in its possession because they happened to have also related to or been provided by another customer whose records were not the subject of the subpoena.

¶28 To the extent that the Parkers proved the Documents were produced in violation of the Act, that claim belongs to Greenway Park, or more specifically, pursuit of that claim belongs to the Trustee in Greenway Park's bankruptcy. The Trustee can enforce that violation of the Act. The Parkers cannot.

III. Breach of Fiduciary Duty

¶29 Independent of its duty in responding to a subpoena pursuant to the Financial Privacy Act, the Parkers also argue that the Bank owed them, as customers, "special duties" which are fiduciary in nature, the breach of which is also a tort. The relationship between the Bank and the Parkers was contractual. Rodgers v. Tecumseh Bank, 1988 OK 36756 P.2d 1223Embry v. Innovative Aftermarket Sys. L.P., 2010 OK 82247 P.3d 1158Wathor v. Mut. Assurance Adm'rs, Inc., 2004 OK 287 P.3d 559

¶30 Not only is the relationship between the Parkers and the Bank determined by their contract, but also it is defined by statute.

Unless a state or national bank shall have expressly agreed in writing to assume special or fiduciary duties or obligations, no such duties or obligations will be imposed on the bank with respect to a depositor of the bank or a borrower, guarantor, or surety, and no special or fiduciary relationship shall be deemed to exist.

6 O.S.2021 § 425Id.

¶31 Nonetheless, the Parkers cite Djowharzadeh v. City National Bank and Trust Co. of Norman, 1982 OK CIV APP 3646 P.2d 616andDjowharzadeh, the bank's loan officer passed along a prospective borrower's confidential information to the wives of the bank's president and senior vice-president. The two wives, who were also shareholders of the bank, usurped the potential borrower's economic opportunity (the purchase of a duplex at below fair market value) after the bank denied the loan. Finding that the "relationship created when a prospective borrower applies for a loan from a bank is a very special one," and that banks should not be in the business of competing financially with their customers, the Oklahoma Court of Civil Appeals reversed summary judgment for the bank and held that the bank owed the potential borrower a duty of confidentiality, and that the potential borrower had alleged a valid cause of action against the bank. Id. ¶¶ 18, 22, 27, 646 P.2d at 619-20.

¶32 The Court did not identify the plaintiff's precise theory of recovery surviving summary judgment other than to note it was not "fiducial" but "properly framed in terms of tortious conduct." Id. ¶¶ 18, 30, 646 P.2d at 619, 620. Oklahoma recognizes several such tortious interference with business relations claims separate from a breach of fiduciary duty claim. See, e.g. Wilspec Techs., Inc. v. DunAn Holding Grp. Co., 2009 OK 12204 P.3d 69

¶33 Nonetheless, to the extent that Djowharzadeh, decided prior to the enactment of 6 O.S.2021 § 425Samman v. Multiple Injury Tr. Fund, 2001 OK 7133 P.3d 302

¶34 The Parkers' reliance on OUJI-- Civil No. 26.2 in support of their claim for breach of fiduciary duty is likewise unavailing. The instruction reads, in pertinent part:

. . . . You are instructed that if you determine that [Specify Grounds for Fiduciary Relationship, e.g., [Defendant] was the [guardian, employee, partner, attorney, accountant, banker, physician, etc.] of [Plaintiff]], then a fiduciary relationship existed in this case between [Plaintiff] and [Defendant] . . . .

Id. (emphasis added). The Oklahoma Uniform Jury Instructions "shall be used unless the court determines that it does not accurately state the law." 12 O.S.2021 § 577.2Sellars v. McCullough, 1989 OK 155784 P.2d 1060

CONCLUSION

¶35 The Parkers asserted two theories of recovery in the district court, violation of the Oklahoma Financial Privacy Act and breach of fiduciary duty. Neither theory requires reversal of the district court's judgment.

¶36 The Parkers proved that Valliance Bank failed to comply with the Act when it produced financial records of Greenway Park in response to the Thornton subpoena. An attorney issuing a subpoena to a financial institution is acting on behalf of the district court, a "government authority," as that term is defined in the Act. A financial institution responding to a subpoena for its customer's records issued by a government authority is prohibited from releasing the records until the government authority certifies that it has complied with the notice provisions of the Act. Because no certification accompanied the subpoena for Greenway Park's records, the Bank produced those records in violation of the Act. However, the Parkers have failed to establish their right to recover on behalf of Greenway Park even though they were also customers of the Bank. The Bank's duty to comply with the Act is owed to the customer whose records were subpoenaed, Greenway Park, not to other customers, like the Parkers, whose financial records were properly contained within the subpoenaed customer's file.

¶37 Any of the Parkers' financial records produced by the Bank were voluntarily provided by the Parkers to secure financing for Greenway Park. Those records were lawfully in the Bank's possession and legitimately included in the Greenway Park loan file. As the district court correctly found, the Bank's production of documents from Greenway Park's loan file, even though it failed to comply with the Act, did not violate the Parkers' rights guaranteed by the Act even though they were also customers of the Bank. They were not the customer whose records were subpoenaed.

¶38 The Parkers' breach of fiduciary duty claim also fails as a matter of law. By statute, the Bank did not owe the Parkers a fiduciary duty to protect the privacy of their financial records absent an agreement in writing to do so. No such agreement is contained in this record.

¶39 The district court's judgment in favor of Valliance Bank is affirmed.

¶40 AFFIRMED.

HIXON, C.J., and, WISEMAN, P.J., concur.

FOOTNOTES

Greenway Park Commercial Owners Ass'n, Inc. v. R.T. Props., LLC, No. 114,015, slip op. (COCA Div. II, Feb. 4, 2019) (unpublished). In that case, this Court reversed the district court's directed verdict in favor of Phillip Parker but otherwise affirmed the judgment for the Defendants.

Greenway Park Commercial Owners Ass'n, Inc. v. R.T. Properties, LLC, No. 114,015 (see footnote 1), the Parkers paid $500,000 to settle Thornton's remaining claims in the Foreclosure Suit.

(1) the injury [was] caused by the statutory violation, (2) the injury was of a type intended to be prevented by the statute, and (3) the injured party was one of the class intended to be protected by the statute.

Ohio Cas. Ins. Co. v. Todd, 1991 OK 54813 P.2d 508

Alva State Bank, private parties sought to obtain proof of a common scheme or design to support their fraud claim against the bank by compelling the bank to produce financial records of non-party customers. The district court ordered production of the documents for an in camera inspection. 1988 OK 44 ¶¶ 3-4, 755 P.2d at 636. The Oklahoma Supreme Court granted the bank's request for a writ of prohibition: "[i]n ordering the production of records in a manner other than that provided by statute, the trial court acted in a manner not authorized by, and contrary to, law." Id. ¶ 12, 755 P.2d at 636.