Jane WOOD, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NO. 141 OF POTTAWATOMIE COUNTY, Oklahoma and William J. Wilson, James W. Foshee, Joe H. Lucy, Robert F. Lempges, and Frank Cotton in their official capacities as members of the Board of Education of Independent School District No. 141 of Pottawatomie County, Oklahoma, Appellees.

No. 56901.

Supreme Court of Oklahoma.

March 22, 1983.

As Modified on Denial of Rehearing April 25, 1983.

Fagin, Hewett, Mathews & Fagin, Arnold D. Fagin and Donita C. Bourns, Oklahoma City, for appellant.

Don S. Bushong, Shawnee, for appellees.

DOOLIN, Justice:

This appeal presents the question of what process is due a nontenured teacher when a decision is made not to renew her teaching contract.

Appellant Jane Wood ("Teacher") was employed as a special education teacher in the McLoud School System for the 1977–78 and 1978–79 school years. Her written employment contract provided for automatic renewal each year unless written notice to the contrary was provided by April 10 of the contract year.

Teacher was evaluated six times by the principal of her school during the two years she was employed by the McLoud School District. In the two evaluations for the first year, Teacher was rated well above the satisfactory level in all areas. Her first evaluation in the second year, in November 1978, showed a marked decline in performance in several areas, but no unsatisfactory ratings. The second evaluation, in February 1979, indicated, for the first time, that Teacher was not performing satisfactorily. The principal stated that her working relationship with the school counsellor was so poor that nonrenewal would be recommended. Principal suggested that Teacher quietly resign. She declined to do so.

Teacher's final two evaluations showed an increasing dissatisfaction with her performance. She received unsatisfactory ratings in three areas: (1) common sense, good judgment; (2) quality of work (penmanship); and (3) working relationship with counsellor. She was also criticized for the amount of controversy generated in the school regarding her evaluations and for obtaining assistance of counsel in framing responses to her evaluations.

Nonrenewal of Teacher's contract was recommended on April 2, 1979 by the principal. Teacher was informed the following day. She promptly requested a due process hearing as provided by 70 O.S.1981, § 6–101(E). The hearing before the McLoud School Board was held May 22, 1979. Teacher appeared in person and was represented by a teacher's association employee, a lay person. Teacher and a co-worker testified on her behalf. Principal testified in defense of the recommendation not to renew. Teacher's contract was not renewed for the 1979–80 school year.

Teacher brought suit in district court against the McLoud School System and against school board members as individuals. She alleged that the board's action was invalid as statutory provisions for nonrenewal had not been strictly followed and, consequently, she had been deprived of due process. The trial judge validated the board's action, finding that due process had been fully afforded.

Teacher appeals from the district court findings, asserting that she has been deprived of both substantive and procedural due process. She argues that a statutory requirement of cause for nonrenewal is sufficient to create a property interest in continued employment, thus triggering due process rights. She argued that strict compliance with statutory procedures for nonrenewal is required. Teacher alleges numerous deviations from statutory procedure and asserts that the evidence was insufficient to support the board's decision.

## I. Substantive Due Process

Both state and federal constitutions prohibit the deprivation of life, liberty or property without due process of law. United States Constitution, 14th Amendment; Oklahoma Constitution, Art. 2, § 7. In addition to procedural protection, the due process clause protects certain substantive rights. The rights protected under substantive due process have been limited to those related to "the individual's freedom of choice with respect to certain basic matters of procreation, marriage and family life." *Harrah Independent School District v. Martin,* 440 U.S. 194, 198, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1979). In *Harrah,* the Supreme Court specifically held that a *tenured* teacher's interest in continued employment was not a substantive due process right. 440 U.S. at 198, 99 S.Ct. at 1064. We hold that a nontenured teacher's interest in continued employment is similarly not a substantive right protected by the due process clause.

## II. Procedural Due Process

The threshold determination which must be made in any procedural due process claim is whether a liberty or property interest, within the meaning of the due process clause, is at stake. *Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). Such interests are not created by the Constitution, but rather are derived from an independent source sufficient to create a legitimate claim of entitlement, such as state law or contract. *Board of Regents v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972).

Here, Teacher's interest is clearly sufficient to warrant procedural safeguards. By statute, employment contracts for nontenured teachers are automatically renewed unless written notice to the contrary is received by April 10 of the contract year. 70 O.S.1981, § 6–101(E). Such notice must inform the teacher of the cause for nonrenewal and of his or her right to a due process hearing. 70 O.S.1981, § 6–103.4(B). The hearing must be requested within ten days of receipt of the notice of nonrenewal. 70 O.S.1981, §§ 6–101(E), 6–103.4(B) and (C). The Oklahoma Legislature has expressly provided that nontenured teachers are to be afforded procedural due process rights at nonrenewal hearings. 70 O.S. 1981, § 6–103.4(E).

## III. Statutory Procedures

Teacher alleges a number of deviations from statutory procedure as the basis for her procedural due process claim. Analytically, these may be divided into two distinct time frames: pre-recommendation procedures and post-recommendation procedures.

The pre-recommendation procedural errors alleged are as follows: (1) failure to provide evaluation policies to Teacher promptly; (2) failure to limit evaluation to those areas identified in the policy; (3) failure to properly admonish teacher prior to recommending nonrenewal; (4) failure to devise an adequate improvement plan; and (5) failure to allow Teacher sufficient time to improve prior to recommending nonrenewal. We believe her claims to be without merit.

The Oklahoma Legislature has been explicit in delineating the process to be followed before a principal may recommend nonrenewal of a teacher to the school board. Each school district must formulate a written evaluation policy which is to be the basis for at least two written evaluations per year. 70 O.S.1981, § 6–102.2. A copy of the evaluation policy is to be made available to each teacher in the school district promptly. *Id.* On completion of each written evaluation, teachers are to be provided

with a copy and afforded an opportunity to respond. 70 O.S.1981, § 6–102.3. Whenever the administrator performing the evaluations believes admonishment of a teacher is necessary, for a reason which may lead to nonrenewal, admonishments must be made in writing and incorporate a reasonable plan for improvement. See 70 O.S.1981, § 6–103.2(1). Teachers are to be allowed a reasonable time for improvement, not to exceed two months from receipt of the written admonishment. 70 O.S.1981, § 6–103.2(2).

■ On examination of the record before us, we conclude that the trial court did not err in determining that the McLoud School District complied with the above procedures. A written evaluation policy was promulgated by the school district on November 7, 1977. Copies of the policy were distributed to teachers in a mandatory meeting which Teacher admits attending. Additional copies were available in all school libraries. The written evaluation policy identified three general areas in which teachers would be evaluated: (1) classroom performance; (2) personal and professional growth; and (3) overall contribution to the school system and community. A copy of the specific evaluation form was attached. Both the policy and the evaluation form warned that the results of evaluations would have a direct bearing on future employment decisions. The form specifically indicated that unsatisfactory ratings could be the basis for a decision not to renew. Admittedly, ability to form good working relationships with colleagues was not specifically identified as an area in which teachers would be evaluated, but neither the policy nor the form purported to identify each and every element which would be considered in making future employments decisions. We do not believe that the Legislature intended that school districts' evaluation policies be so precise. Under *existing law* we believe that the area of personal and professional growth is broad enough to encompass working relationships and that it is proper for the school district to consider such matters in deciding whether to offer permanent employment to probationary teachers. Moreover, teacher was informed that her performance in this area was being evaluated prior to the decision to renew by the school board.

■ We also believe that Teacher's complaints that she was not provided with an improvement plan or an adequate opportunity to improve are without merit. Teacher's evaluations were clearly adequate to inform her that her relationship with the school counsellor must markedly improve. As we noted in *Childers v. Silo Public Schools,* 645 P.2d 992 (Okla.1981), the "nature of the problems may well have a definite bearing on what can reasonably be expected from the administration in the way of assistance." See 645 P.2d at 995. Problems personal to the individual teacher may "not lend themselves to assistance or to a program for improvement." *Id.* In *Childers,* we identified the inability to work with fellow teachers as one such problem. *Id.* The problem was first brought to Teacher's attention on February 9, 1979. Her principal did not make the recommendation to nonrenew until April 2, 1979. The record indicates *no* effort on Teacher's part to improve her relationship with the school counsellor or even to discover the nature of the problem. Under these circumstances we believe the time for improvement was adequate.

■ We turn finally to Teacher's claim that she was deprived of her procedural due process rights in the events following the principal's recommendation of nonrenewal. Teacher asserts that the admission of hearsay evidence at the due process hearing deprived her of the opportunity to confront her accusers and violated 70 O.S.1981, § 6–103.9 which expressly makes "all hearings authorized by this act" subject to the Oklahoma Evidence Code.[1] She bases this

1. 70 O.S.1981, § 6–103.9 refers specifically to 75 O.S.1981, § 310 which allows admission of evidence which possesses value commonly accepted by reasonably prudent men in the conduct of their affairs. Hearsay is not specifically excluded. See *Young v. Board of Pharmacy,*

argument on the fact that only the principal testified at the due process hearing and not the school counsellor with whom she was alleged to have had difficulties.

It is elementary that due process is a flexible concept, depending in large measure on the nature of the rights at stake and the nature of the proceedings. *Arnett v. Kennedy,* 416 U.S. 134, 155, 94 S.Ct. 1633, 1645, 40 L.Ed.2d 15 (1974). Where a particular method of procedure is provided, it must be followed. *Wolfenbarger v. Hennessee,* 520 P.2d 809, 812 (Okl.1974). Here, no specific method of procedure is provided; rather, the Legislature has stated the nontenured teachers are to be granted a hearing before the local school board and that the hearing shall afford "all such procedural due process rights as are guaranteed by the Oklahoma and United States Constitutions." 70 O.S.1981, § 6–103.4(E). In contrast, tenured teachers are afforded a hearing before a judge who must be a licensed attorney. 70 O.S.1981, § 6–103.5. A tenured teacher also has the right to counsel, to present evidence, to testify on his or her own behalf, and to an impartial decision based on the evidence. 70 O.S.1981, § 6–103.7. It is clear that the Legislature did not intend that tenured and nontenured teachers be afforded the same treatment. We conclude that the Legislature intended that nontenured teachers be afforded only an informal hearing with minimal procedural protection.

The United States Supreme Court has established a guideline to determine whether a given procedure is required by due process. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). A balance is to be struck among:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the process used and the probably value, if any, of additional or substitute procedural safeguards; and finally, the Government's in-

terest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. 424 U.S. at 336, 96 S.Ct. at 903.

After weighing these factors, we conclude that the exclusion of hearsay evidence from nontenured teachers' due process hearings is not required. Teacher's interest in continued employment is relatively slight, although admittedly of great personal interest to her. No statutory cause for nonrenewal must be shown, although nontenured teachers are entitled to an explanation of the action taken. In contrast, the state's interest in providing a quality education for its children is high. Considering the stringency of the pre-recommendation procedures, the risk of an erroneous decision does not seem greatly heightened by the admission into evidence of hearsay at the due process hearing. Indeed, requiring lay persons to determine what is and what is not hearsay evidence would greatly increase the risk of mistake. Finally, requiring the Oklahoma Evidence Code to apply to the due process hearings of nontenured teachers would require a significant restructuring of the present legislative scheme. Essentially the same type of hearing that is afforded to tenured teachers would be required. This would significantly increase fiscal and administrative burdens.

### IV

We find that Teacher has been fully afforded all procedural due process rights to which she is entitled. Accordingly, the order of the district court is

AFFIRMED.

BARNES, C.J., and IRWIN, HODGES, LAVENDER, OPALA and WILSON, JJ., concur, SIMMS, V.C.J., concurs in result.

81 N.M. 5, 462 P.2d 139, 36 ALR3d 1, § 3[a] (New Mexico 1969); 2 Am.Jur.2d Administra-

tive Law § 378.