Dear Senate Hobson,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following question:
 Did the enactment of 59 O.S. 161.2 (1991), change the healing art of chiropractic beyond its traditional boundaries to include the fields of orthopedics, physical therapy, pediatrics and family practice?
¶ 1 Title 59 O.S. 161.2 (1991), provides:
 Chiropractic is the science and art that teaches health in anatomic relation and disease or abnormality in anatomic disrelation, and includes hygienic, sanitary and therapeutic measures incident thereto. The scope of practice of chiropractic shall include those diagnostic and treatment services and procedures which have been taught by an accredited chiropractic college and have been approved by the Board of Chiropractic Examiners.
¶ 2 Prior to 1991, part of the language of 161.2 was found in59 O.S. 164 (1990), which provided, in part:
 Chiropractic is defined to be the science that teaches health in anatomic relation and disease or abnormality in anatomic disrelation, and includes hygienic and sanitary measures incident thereto.
¶ 3 Your question is whether the additional language in 59O.S. 161.2 changed the traditional definition of chiropractic.
¶ 4 The healing art of chiropractic is defined traditionally as:
 [A] system of therapeutics based upon the claim that disease is caused by abnormal function of the nerve system. It attempts to restore normal function of the nerve system by manipulation and treatment of the structures of the human body, especially those of the spinal column.
Dorland's Medical Dictionary, 27th Edition, W.B. Saunders Co., 1988, at page 316. In fact, the word "chiropractic" is derived from the Greek words "kheir" and "prattein," which means to do by hand." Id.
¶ 5 In order to determine what effect the amendments to 59O.S. 161.2 have on the definition of chiropractic, it is necessary to apply standard rules of statutory construction. The primary rule is to determine the legislative intent of a statute in light of its general purpose and object. TXO Production Corp.v. Oklahoma Corporation Commission, 829 P.2d 964 (Okla. 1992). Words in a statute must be understood in their ordinary meaning, except when a contrary intention plainly appears or when otherwise defined by the Legislature. 25 O.S. 1 (1991). Intent must be ascertained from the entire act in light of its purpose.Midwest City v. Harris, 561 P.2d 1357 (Okla. 1977). In addition, construction must be done in such a way as to make every word and sentence operative rather than render statutory provisions nugatory. TWA v. McKinley, 749 P.2d 108 (Okla. 1988).
¶ 6 With these interpretive guidelines in mind, we see that the first sentence of 59 O.S. 161.2 serves to establish doctors of chiropractic in a distinct field of the healing arts apart in principle and practice from other healing arts sanctioned by the Oklahoma Legislature, such as doctors of medicine, 59 O.S. 481
(1991), et seq., and doctors of osteopathy, 59 O.S. 620 (1991), et seq. In short, chiropractic is a health field "that teaches health in anatomic relation and disease . . . in anatomic disrelation."
¶ 7 It is within the proper exercise of police power for the Legislature to enact laws for the health, safety and welfare of the public, including laws which define, authorize and establish requirements for the practice of the healing arts. Spiva v.State, 584 P.2d 1355 (Okl.Cr. 1978). Further, it is within legislative authority to define words in statutes. Oliver v.City of Tulsa, 654 P.2d 607 (Okla. 1982). The Legislature has enumerated and defined the various health professions and prohibits practice outside the authority granted. For example, doctors of medicine are defined broadly to be those who "treat disease, injury, or deformity of persons by any drugs, surgery, manual or mechanical treatment whatsoever." 59 O.S. 492 (1991).
¶ 8 Osteopathy is defined as:
 [A] system of health care founded by Andrew Taylor Still and based on the theory that the body is capable of making its own remedies against disease when it is in normal structural relationship and has favorable environmental conditions and adequate nutrition. It utilizes generally accepted physical, pharmacological and surgical methods of diagnosis and therapy while placing strong emphasis on the importance of body mechanics and manipulative methods to detect and correct faulty structure and function.
59 O.S. 621 (1991).
¶ 9 Podiatry has been defined as a health field for the "treatment and care of the human foot." 59 O.S. 136 (1991).
¶ 10 Chiropractic, as expressed by the Legislature in the first sentence of 59 O.S. 161.2, has been included in Oklahoma law as a separate and distinct branch of the healing arts based upon the study of anatomic disrelation with corrective action based upon manipulation and adjustment. The Legislature, in the enactment of the Chiropractic Practice Act, 59 O.S. 161 (1991), et seq., thereby provided the residents of this state a distinct alternative for diagnosis, treatment and prevention of illnesses and the maintenance of health separate and apart from other healing arts stated above.[1]
¶ 11 We now turn to the second sentence of 59 O.S. 161.2. In statutory construction, the legislative intent behind a statute is to be ascertained from the whole act in light of its general purpose and object. TRW/Reda Pump v. Brewington, 829 P.2d 15
(Okla. 1992).
¶ 12 The first sentence of 59 O.S. 161.2 provides a definition of chiropractic and serves to establish the health field legislatively. However, it does not define all aspects of the health field and can be considered rather general in nature. The second sentence in that section provides:
 The scope of practice of chiropractic shall include those diagnostic and treatment services and procedures which have been taught by an accredited chiropractic college and have been approved by the Board of Chiropractic Examiners.
¶ 13 Again, we must seek and give effect, if possible, to the expressed legislative intent of this enactment. TXO ProductionCorp. at 968-969. From reading the second sentence of 59 O.S.161.2 in the context of the Chiropractic Practice Act as a whole and statutes which deal with the other healing arts, we do not find that the Legislature intended or sought to expand, contract or alter the field of chiropractic or to allow doctors of chiropractic to practice in other health fields. Indeed, to allow the second sentence of 59 O.S. 161.2 to control the entire definition of chiropractic would render nugatory the legislative statement of the definition of chiropractic in the first sentence of 161.2. We seek a construction which would not render the first sentence nugatory. See, TWA at 110.
¶ 14 Instead, because of the general nature of the first sentence, the second sentence appears to provide specification that various diagnostic and treatment services of a chiropractic nature may be used in this state only when taught by an accredited chiropractic college and approved by the Board. There is no indication that the addition of the second sentence in 161.2 was intended to allow chiropractic physicians to practice in other areas of the healing arts unrelated to chiropractic. Indeed, a plain reading of 161.2 reflects that it relates solely to chiropractic as a healing art and no other health profession.
¶ 15 To view the second sentence of 59 O.S. 161.2 more broadly would also render ineffective the distinctions created by the Legislature in the enactment of the various health profession acts by allowing an agency to set its own scope of practice. Section 59 O.S. 161.2 must be read in light of the duty of the Legislature to establish the policy of an act and to provide adequate guidelines for its implementation. Democratic Party ofOklahoma v. Estep, 652 P.2d 271 (Okla. 1982). A more broad interpretation of the second sentence would in effect not allow the Board or any chiropractic college the authority to determine the boundaries of the practice of chiropractic unfettered by legislative limitations. Instead, both sentences in 161.2 must be read together. The first sentence establishes chiropractic as a certain healing art. The second sentence allows the Board to determine diagnostic and treatment services and procedures within that healing art. The entire section must also be read in light of statutes which deal with other healing arts established by the Legislature.
¶ 16 Having concluded that the Legislature did not expand the traditional meaning of chiropractic by the amendment of 59 O.S.161.2 (1991), we now turn to your more specific question of whether the practice of chiropractic includes orthopedics, physical therapy, pediatrics or family practice.
¶ 17 The Legislature did not specify every diagnostic and treatment service and procedure possible to be approved by the Board. In order to address the areas of practice you raised in your question, we must review appropriate statutes and authoritative works in those areas.
¶ 18 The fields of orthopedics and pediatrics are not defined by the Legislature and so must be construed in their ordinary sense. See, Midwest City, 561 P.2d at 1358. Orthopedics is defined generally as:
 [T]hat branch of surgery specially concerned with the preservation and restoration of the function of the skeletal system, its articulations and associated structures.
Dorland's Medical Dictionary, 27th Ed., W.B. Saunders Company, 1988, page 1192 (emphasis added).
¶ 19 From this perspective, orthopedics is outside the definition of chiropractic as set forth by the Legislature in as much as this field of practice relates to the surgical
preservation and restoration of the skeletal system. Chiropractic physicians in this state are specifically prohibited from performing major or minor surgery." 59 O.S. 161.12(B)(5) (1991).
¶ 20 Pediatrics is defined generally as:
 [T]hat branch of medicine which treats of the child and its development and care and of the diseases of children and their treatment.
Id. at page 1246 (emphasis added).
¶ 21 Pediatrics, while not limited to a specific medical or surgical procedure, has a common understanding as a branch of allopathic or osteopathic medicine. This does not mean that 59O.S. 161.2 may not be fairly construed to include those chiropractic techniques which have application to children. Instead, the use of the word "pediatrics" by chiropractics may improperly imply that allopathic or osteopathic treatment and procedures are performed by a chiropractic. As such, although chiropractic physicians are authorized to practice and perform their profession on children, 161.2 does not allow them to practice "pediatrics."
¶ 22 Physical therapy has been defined by the Legislature as:
 [T]he use of selected knowledge and skills in planning, organizing and directing programs for the care of individuals whose ability to function is impaired or threatened by disease or injury, encompassing preventive measures, screening, tests in aid of diagnosis by a licensed doctor of medicine, osteopathy, chiropractic, dentistry, or podiatry and evaluation and invasive or noninvasive procedures with emphasis on the skeletal system, neuromuscular and cardiopulmonary function, as it relates to physical therapy.
59 O.S. 887.2 (1991).
¶ 23 Physical therapy is specifically defined to include tests in aid of diagnosis for chiropractic physicians and treatment performed upon the referral of a chiropractic physician. 59 O.S.887.2 (1991). Chiropractic is defined to include therapeutics measures. 59 O.S. 161.2 (1991). This similarity of the language used in the Chiropractic Practice Act and the Physical Therapy Act reflects an overlapping of chiropractic and physical therapy. Indeed, there is nothing in either practice act which would indicate that a chiropractic physician could not himself or herself perform the tests in aid of diagnosis or treatment that he or she might refer instead to a physical therapist. In fact, the Physical Therapy Act provides that it "shall not prohibit or prevent any person licensed in the healing arts in this state from engaging in the practice for which he is duly licensed." 59O.S. 887.3 (1991). Thus, where these fields overlap, a chiropractic physician may perform the physical therapy aspects of chiropractic.
¶ 24 "Family practice" is defined neither by the Legislature nor medically and so must be construed in its ordinary sense. 25O.S. 1 (1991). In this sense, it would tend to relate to a practice by a health-care practitioner in which the health problems, in general, of a family may be treated by the same licensed health-care practitioner.
¶ 25 The definition of chiropractic is not so restrictive as to prohibit a family orientation to a practice, since "family practice" connotes more a practice related to all members of a family rather than a type of health-care specialization. However, this would not allow a single health-care practitioner to practice in any area of the healing arts in which the practitioner is not licensed. A chiropractic physician who maintains a family practice would still be authorized to practice chiropractic only.
¶ 26 Chiropractic physicians are authorized to practice in all traditional areas of chiropractic, and the Board of Chiropractic Examiners may create areas of specialization related to this health field. 59 O.S. 161.6 (1991). Chiropractic physicians, however, cannot be authorized to practice in areas not related to chiropractic merely because the Board approves classes taught at an approved chiropractic college. The second sentence of 59 O.S.161.2 must be read in conjunction with the first sentence so as to limit the area of practice to those diagnostic and treatment services and procedures of a chiropractic nature. While this would serve to allow specialization, a chiropractic physician would not, for example, be authorized to dispense dangerous drugs as this is outside the scope of the tradi tional practice of chiropractic.[2]
¶ 27 Nor would this allow the Board to create areas of specialization outside of this traditional scope.
¶ 28 In general, then, we find that it is necessary to read the elements of the Chiropractic Practice Act in accordance with the general nature of chiropractic as expressed by the Legislature in 161.2 as a distinct health profession separate and apart from other distinct health professions. This authorizes licensed chiropractic physicians to practice in any of the traditional areas of chiropractic. In addition, in areas of specialization taught by accredited chiropractic colleges and approved by the Board, chiropractic physicians in this state may specialize to the extent authorized by the Board. The amendment of 59 O.S.161.2, however, did not authorize the expansion of chiropractic into areas outside the traditional definition set forth in 161.2.
¶ 29 It is, therefore, the official opinion of the AttorneyGeneral that the enactment of 59 O.S. 161.2 (1991), did notchange the healing art of chiropractic beyond its traditionalmeaning, which includes physiological therapeutics.
 Pursuant to the Chiropractic Practice Act, a chiropractic physician may maintain a family practice, although this is not an area of health-care specialization.
 Chiropractic physicians cannot be authorized to practice in areas outside the traditional and defined scope of chiropractic, such as orthopedics or pediatrics, or to prescribe or administer dangerous drugs.
SUSAN BRIMER LOVING ATTORNEY GENERAL OF OKLAHOMA
JAMES ROBERT JOHNSON ASSISTANT ATTORNEY GENERAL
[1] Oklahoma law provides that for purposes of insurance coverage residents of this state shall be entitled to freedom of choice in their determination of which type of diagnosis and treatment to obtain. 36 O.S. 6055 (1991), et seq., as amended. See, A.G. Opin. No. 89-6.
[2] Title 59 O.S. 355 (1991) et seq., provides for the regulation of the dispensing of dangerous drugs in this state. Section 59 O.S. 355(2) defines a "licensed practitioner" as "a physician, dentist, podiatrist, osteopathic physician or optometrist licensed to practice and authorized to prescribe medication within the scope of his practice[.]" While, in general, a "physician" includes all of the above as well as chiropractors (59 O.S. 725.2 (1991)), the use of the word "physician as well as other doctors specifically identified in 355 indicates that the word "physician" therein is not used in its legislatively defined sense set forth in 59 O.S. 725.2.
Rather, it is used in its ordinary sense to refer to medical doctors only. As such, the exclusion of chiropractic physicians from the list in 355 indicates a legislative intent to exclude chiropractic physicians from such authorization to dispense dangerous drugs. Legislative intent must be ascertained from an entire act in light of its purpose. Wood v. Independent School District No. 141 of Pottowatomie County, 661 P.2d 892 (Okla. 1983).