2011 OK 22

Michael A. DAFFIN, Plaintiff/Appellee,

v.

The STATE of Oklahoma ex rel., OKLA-
HOMA DEPARTMENT OF MINES, and
Mary Ann Pritchard, Director, Okla-
homa Department of Mines, Defen-
dants/Appellants,

and

T & M Sand and Gravel, Inc.,
Intervenor, Co–Appellant.

No. 108084.

Supreme Court of Oklahoma.

March 29, 2011.

Mark Secrest, Caroleen Carman, Oklahoma Department of Mines, Oklahoma City, Oklahoma, for Appellants.

Fourth Scoufos, Thomas W. Condit, Sallisaw, Oklahoma, for Appellee.

Leonard M. Logan, IV, Courtney M. Wolin, Vinita, Oklahoma, for Intervenor.

## OPINION

WATT, J.

¶ 1 The dispositive issue in this case is whether certain statutes and rules found in The Mining Lands Reclamation Act, 45 O.S. 2001, §§ 721–738, provided sufficient procedural due process to Plaintiff/Appellee Michael A. Daffin to protect his property rights in connection with a pending application for a mining permit. We answer this question in the negative. We, therefore, affirm the temporary injunction issued by the trial court to prevent Defendant/Appellant Oklahoma Department of Mines (ODM) from holding an "informal conference" to consider the application of Intervenor/Co–Appellant T & M Sand and Gravel, Inc. (T & M), in Daffin's absence.[1] We have jurisdiction to consider

---

1. ODM appeals the temporary injunction issued against it on February 18, 2010. ODM was enjoined from proceeding with an informal conference to consider T & M's application for a permit to engage in non-coal surface mining and reclamation operations in Sequoyah County, Oklahoma, pursuant to the Act. The policy of the Act, declared at 45 O.S.2001 722, provides for the reclamation and conservation of land subjected to surface disturbance by mining, preservation of natural resources and the protection and perpetuation of the taxable value of property.

The temporary injunction provides in part:

It is therefore ordered, adjudged and decreed by the Court that the Defendant, Defendant's director, agent, employees, attorneys and all others who are under control of the Defendant, shall be, and are hereby temporarily restrained and enjoined from holding an informal conference and proceeding with the application of T & M Sand and Gravel, Inc. for a permit to engage in surface mining and rec-

this appeal, pursuant to 12 O.S. Supp.2009 993(A)(2).[2] This Court previously retained this case.[3]

## FACTS AND PROCEDURAL HISTORY

¶ 2 Notice of the proposed mining operation was published in a newspaper in Sequoyah County, as required by OAC Rule 460:10–17–5.[4] Daffin attempted to take part in an informal conference allowed under OAC Rule 460:10–17–7[5] to address his concerns, **prior to** ODM's decision on T & M's application,[6] about protecting his property values and the safety of all residents and property owners in the vicinity of the proposed mining operation. However, the ODM determined Daffin was not eligible to participate in the informal conference because he did not reside in, or own property within, one mile of the proposed mining site, as required by 45 O.S. Supp.2008, 724(H)(2),[7] and OAC Rule

lamation operations case number PAN08–05–IC and Permit LE–2188 until further order of the Court.

2. A. When an order:

. . .

2. Denies a temporary or permanent injunction, grants a temporary or permanent injunction except where granted at an ex parte hearing, or discharges, vacates, or modifies or refuses to discharge, vacate, or modify a temporary or permanent injunction;

. . .

the party aggrieved thereby may appeal the order to the Supreme Court without awaiting the final determination in said cause, by filing the petition in error and the record on appeal with the Supreme Court within thirty (30) days after the order prepared in conformance with Section 696.3 of this title, is filed with the court clerk. . . .

3. Pursuant to 12 O.S. Supp.2003 1653(C), the Oklahoma Attorney General's Office informed this Court on January 21, 2011, that it declined to intervene in this appeal.

4. OAC 460:10–17–5 provides, in part:

An applicant for a permit shall place an advertisement in a newspaper of general circulation in the county of the proposed non-coal surface mining and reclamation operations. The applicant shall place the advertisement in the newspaper at the same time the complete permit application is filed with the Department and shall publish the advertisement at least once a week for four (4) consecutive weeks. . . .

5. **OAC Rule 460:10–17–7** provides, in part:

(a) Any person **eligible under Section 460:10–17–6(a)** may, in writing, request that the Department hold conference on any application for a permit . . . . [emphasis added].

. . .

(b) Except as provided in (c) of this section, if a conference is requested in accordance with (a) of this Section, the Department shall hold a conference within a reasonable time following the receipt of the request. The conference shall be conducted according to the following:

. . .

(2) The conference shall be conducted by a representative of the Department, who may accept oral or written statements and any other relevant information from any party to the conference. An electronic or stenographic record shall be made of the conference proceeding. The record shall be maintained and shall be accessible to the parties of the conference until final release of the applicant's performance bond or other equivalent guarantee.

**OAC Rule 460:10–17–6(a)** provides:

(a) Any person **who resides or owns property within one mile of the proposed non-coal mining operation** shall have the right to file written objections to an initial or revised application for a permit with the Department, within 14 days after the last date of publication of the newspaper notice required by 460:10–17–5. [emphasis added].

6. In his response to ODM's dismissal motion in the trial court, Plaintiff stated:

Plaintiff Michael Daffin wants to present evidence that the proposed mining operation will diminish the value of his real property and the property of others who live in the Dam Site No. 32 flood plain. Plaintiff wants to raise, present (sic) and real public safety concerns about the proposed mining operation. However, Plaintiff cannot be heard before a decision is made in order to protect his interest in his property if Section 724(G)(2) of Title 45 of the Oklahoma Statutes and OAC 460:10–17–6(a) exclude him and prevent him from filing a written objection and presenting evidence and being heard at the informal conference. The due process clauses of the United States and Oklahoma Constitutions provide that certain substantive rights, life, liberty and property, cannot be deprived except by constitutionally adequate procedures. U.S. Constitution Amend. 14 § 1; Okla. Const., Art. 2 § 7.

7. 45 O.S. Supp.2008, 724(H)(2), similar in content to § 724(G)(2) cited by Plaintiff, provides:

2. Any property owner or resident of an occupied dwelling who may be adversely affected located **within one (1) mile of the mining operation** shall have the right to protest the issuance of a permit and request a public hearing. [emphasis added].

460:10–17–6(a).[8]

¶3 Daffin filed his Petition for Declaratory and Injunctive Relief on September 22, 2008. On March 12, 2009, the trial court granted T & M's motion for intervention as of right. See 12 O.S. Supp.2003, 2024(A)(2). However, on March 29, 2010, the trial court granted Daffin's motion to vacate the order granting T & M's intervention.[9] ODM and T & M appealed.[10]

## CONTENTIONS OF THE PARTIES

¶4 In his claim for declaratory relief, Daffin sought a ruling that OAC Rule 460:10–17–6 is unconstitutional "as failing to satisfy state and federal standards of due process required for administrative proceedings which may directly and adversely affect legally protected interests." In his claim for injunctive relief, he requested that ODM be restrained from proceeding with the informal conference and application for license based on the notice provisions under Rule 460:10–17–6, or "at least ... until the constitutionality of that rule can be determined." [11]

¶5 Appellants ODM and T & M contend, *inter alia*, that the trial court erred because Daffin failed to meet the standards for granting a temporary injunction. They both contend Daffin possesses an adequate remedy at law and that he failed to exhaust his administrative remedies. Appellants also assert that

Daffin cannot prove that he will suffer irreparable harm if an injunction is not issued because the decision made at an informal conference is not a **final** decision. ODM argues that anyone aggrieved may request administrative relief under OAC Rule 460:10–17–15.[12] Thus, it contends, even potential deprivation to one's property rights is not **irreparable harm** because administrative review is still available.

■ ¶6 We acknowledge that the ODM regulations purport to give Daffin a chance to question the reason for the Department's decision prior to issuance of the permit. The ODM contends this chance to come forward is what protects Daffin's property interest and provides him with adequate procedural due process. The ODM questions what Mr. Daffin has lost under this procedure because no permit has been issued. We believe it is the ability to protect his property interest and to be part of the ODM regulatory process in the first instance. By the time Daffin and others similarly situated are allowed to be heard, opinions and evidence will be part of the record. The record may later be expanded, but they will have forever lost the opportunity to present facts to the Department representative who makes the decision, in the same way other property owners were allowed to do so. If Daffin is required to wait for a post-decision hearing, he not only

8. See note 5, supra.

9. T & M's intervention plays no part in resolving the dispositive due process issue. Thus, the trial court correctly stated that whether T & M's application is ultimately granted or denied has no bearing on the issue of "whether or not Mr. Daffin's allowed or not allowed to participate in the hearing ... T & M doesn't have any interest in those arguments." Transcript of hearing on February 18, 2010.

10. Before the injunction was issued, the ODM filed an application to assume original jurisdiction in this Court, requesting a writ of prohibition, in case number 107,484. This Court denied original jurisdiction on November 10, 2009.

11. At the same time, Daffin sought and was granted a temporary restraining order (TRO) to enjoin the defendants from holding the informal conference until he and other persons living more than one mile from the proposed site, but within the projected flood plains of the Sallisaw

Creek Flood Water retarding structures, Dam Sites No. 32, No. 33 and No. 34, are given adequate notice and an opportunity to be heard. He alleged this was necessary to preserve the status quo and that it was likely he would prevail on the merits because "the appropriate public agencies have already declared that these dams are high hazard dams that do not meet the current performance and safety standards for a high hazard dam and one of these dams are located less than one thousand (1,000) yards from T & M Sand and Gravel's proposed blasting area." Plaintiff's Application for Temporary Restraining Order, O.R. 36.

12. Rule 460:10–17–15(a) provides:

(a) General. Within 30 days after an **applicant or permittee** is notified of the decision of the department concerning an application for approval of a permit for mining, the **applicant, permittee, or any person with an interest which is or may be adversely affected** may request a hearing on the reasons for the decision, in accordance with this Section. [emphasis added].

has the burden of persuading the Department representative in his favor, but also the added burden of persuading the hearing officer against the wisdom of the previous decision made by a different ODM representative. This presents an additional burden to Daffin and others in his position. Although he was told he could attend without participating, being present without a voice is not a "meaningful opportunity" to be heard. When a neighboring landowner is confronted with harm to his property, he does not have to wait until the actual infliction of such loss; he has a right to seek injunctive relief from the court. See *Sharp v. 251st Street Landfill, Inc.,* 1996 OK 109, 925 P.2d 546.

## INJUNCTIVE RELIEF

¶ 7 It is well settled in Oklahoma that the grounds for issuing a temporary injunction are: (1) the likelihood of success on the merits, (2) irreparable harm to the party seeking injunctive relief if relief is denied, (3) relative effect on the other interested parties, and (4) public policy concerns arising out of the issuance of injunctive relief. *Tulsa Order of Police Lodge No. 93 v. City of Tulsa,* 2001 OK CIV APP 153, 39 P.3d 152 (cert.den.2001). The need for an injunction must be shown by clear and convincing evidence, and the nature of the injury must not be speculative in nature. *House of Realty v. City of Midwest City,* 2004 OK 97, 109 P.3d 314, citing *Sharp v. 251st Street Landfill, Inc.,* 1996 OK 109, 925 P.2d 546, 549.

¶ 8 In the present case, Plaintiff presented evidentiary materials showing that the Natural Resources Conservation Service (NRCS) of the U.S. Department of Agriculture had expressed concern about blasting that would take place in the proximity of Dam No. 33. Exhibits attached to Plaintiff's petition indicate the NRCS describes the three dams as "high hazard" dams [13] which

---

13. The NRCS report defines the dams as "high hazard class c dams, not because of the conditions of the dams suggest imminent failure, but because of the consequences of failure if a catastrophic breach were to occur for any reason."

14. The NRCS report also provides:
 [P]resently, a catastrophic failure of the dams would result in property and infrastructure damages and potential loss of life. The dams

do not meet current safety and performance standards.[14] Although Plaintiff does not live within one mile of the mining site, he and other residents live within the projected flood plane of Dam Site No. 32. He has provided evidentiary support that Dam No. 33 is less than 1000 yards, which is less than one mile, from the blasting site.

¶ 9 Terry Fox, a representative of Triad Environmental Services, T & M's consulting firm, testified that the NRCS requested T & M to establish blast monitoring. He stated the NRCS is in the process of refurbishing and replacing pipe to Dam No. 33 in the Sallisaw Creek Watershed flood water area and is concerned about movement in the pipe and spillway system caused by blasting. He stated the NRCS wants to set seismographs to monitor the blasting.

¶ 10 If the dams are damaged from the blasting, Plaintiff's property, and that of many others, is vulnerable. Generally, exhaustion of administrative remedies is a prerequisite for resort to the courts. However, this doctrine will not bar court action if an administrative remedy is unavailable, ineffective or would be futile. *Lone Star Helicopters, Inc. v. The State of Oklahoma,* 1990 OK 111, 800 P.2d 235. Such is the case here.

¶ 11 We agree with the trial court that a temporary injunction was necessary, pending a determination of the constitutionality of the ODM statute and rule, and was shown by clear and convincing evidence.

## THE INFORMAL CONFERENCE

¶ 12 The Oklahoma Administrative Code (OAC) Rules set out the objectives of the subchapter pertaining to the permit review and approval process at OAC 460:10–17–2, which provides:

 The objectives of this Subchapter are to:

> do not meet the current performance and safety standards because of the change in downstream conditions. Failure of the dams would potentially inundate 21 homes, 27 businesses, five major roads, and one railroad. This would not only affect these structures but impact human health and safety services and disrupt economic activity.

(1) provide for public participation in the review of applications and the issuance, or denial of permits;

(2) ensure prompt and effective review of each permit application by the Department; and

(3) provide the minimum requirements for the terms and conditions of permits issued and the criteria for approval or denial of a permit.

¶ 13 As stated above, the informal conference may be requested only by a resident or property owner within one mile of the proposed mining location. At the conference, a representative of ODM may accept oral or written statements and other relevant information from any party to the conference. A record is made of the proceeding and is accessible to the parties of the conference until the final release of the applicant's performance bond or other guarantee. See Rule 460:10–17–7(b)(2).[15] Once the Department completes the findings after the hearing, it determines whether to issue or deny the permit; it must then notify "all parties" of its decision. See 45 O.S. Supp.2008 724(H)(5).[16] Within 30 days of the decision, the applicant, permittee, "or any person with an interest which is or may be adversely affected," may request a hearing on the reasons for the decision. Rule 460:10–17–15(a).[17] However, under Rule 460:10–17–11(c) [18] only the "permit applicant" and "each person who is a party to the conference" **are required** to be notified of the Department's decision. Thus, a person in Daffin's position will not be personally notified of the decision, but he must act within 30 days to request a hearing before the decision becomes final.

¶ 14 Appellant ODM contends the procedure for the informal conference is adequate because, at that point, no permit has been issued. ODM contends it has followed the statutory and regulatory requirements for considering a mining permit application which provides fairness and due process to all concerned. ODM further argues in its brief-in-chief that if the injunction is allowed to stand,

> ODM will face district court challenges, not to its decisions, not to permit issuances, but to the review of every single permit application submitted, without regard to administrative procedures. In fact, every regulatory agency will face district court actions for every review process without regard to administrative procedures. In effect, the APA will be voided. Accordingly, this temporary injunction should be dissolved.

¶ 15 Thus, ODM appears to argue that the State's interest in promoting a smooth administrative process for issuing mining permits outweighs the risk of harm of withholding meaningful due process from some, but not all, affected property owners.

## CONSTITUTIONAL CONSIDERATIONS

■■■■ ¶ 16 Although Plaintiff is not damaged at this time, he is not required to wait until the harm occurs before seeking injunctive relief. See *Sharp v. 251st Street Landfill, Inc.*, 1996 OK 109, 925 P.2d 546. The due process clauses of the United States and Oklahoma Constitutions provide that citizens cannot be deprived of their rights to life, liberty or property without first receiving notice and a meaningful opportunity to appear and be heard.[19] See gen., *Mullane v.*

---

15. See note 5, supra.

16. 45 O.S. Supp.2008 § 724(H)(5):
    5. Upon completion of findings after the hearing, the Department shall determine whether to issue or deny the permit, and shall notify all parties of its decision.

17. See note 11, supra.

18. Rule 460:10–17–11(c), provides:
    c. If a conference is held under Section 460:10–17–7 the Department shall give its written findings to the **permit applicant** and to **each person who is a party to the conference,**

approving, modifying or denying the application in whole, or in part, and stating the specific reasons therefore in the decision. [emphasis added].

19. Amendment XIV.

**Section 1.** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; **nor shall any State deprive any person of life, liberty, or property, without due process of**

*Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). It is not disputed that Daffin and others similarly situated have a protected property interest in their homes and real property. While state law may afford greater rights than those guaranteed by federal law, it may not curtail rights guaranteed by federal law or the United States Constitution. *In re Initiative Petition No. 349, State Question No. 642*, 1992 OK 122, 838 P.2d 1, 61 USLW 2102. It is only when state law provides less protection that the question must be determined by federal law. *Alva State Bank and Trust Company v. Dayton*, 1988 OK 44, 755 P.2d 635, 638, 56 USLW 2678.[20]

## Under Oklahoma Law, 45 O.S. Supp.2008 724(H)(2) and OAC Rule 460:10–17–6(a) are unconstitutional.[21]

¶ 17 In *DuLaney v. Oklahoma State Department of Health*, 1993 OK 113, 868 P.2d 676, we considered what process was due to mineral interest owners in the area of a proposed landfill operation. We held due process required that mineral interest owners be given notice and an opportunity to contest the permit at the administrative level. We found that an individual proceeding under the APA was required, which is not an issue here. We stated it would be ludicrous not to extend due process protection to mineral owners, when the Legislature had provided protection to surface owners through damages under the Surface Damages Act. Moreover, we stated:

> law; nor deny to any person within its jurisdiction the equal protection of the laws. [emphasis added].
> The Oklahoma Constitution, Article 2, Section 7, provides:
> > No person shall be deprived of life, liberty, or property, without due process of law.

**20.** We held in *Alva State Bank*, at 638:
> [T]he people of this state are governed by the Oklahoma Constitution, and when it grants a right or provides a principle of law or procedure beyond the protections supplied by the federal constitution, it is the final authority. **This is so even if the state constitutional provision is similar to the federal constitution.** [emphasis added]. The United States Constitution provides a **floor of constitutional rights**-state constitutions provide the ceiling. [emphasis in original].

[S]ix–Hart's argument that any constitutional right to be heard was satisfied by the **public meeting** held prior to the granting of the permit and the **opportunity to provide supplemental information** to the Department of Health is unpersuasive. Although the due process clause does not mandate inflexible procedures universally applicable to every imaginable situation, the due process clauses of both the federal and Oklahoma constitutions require at a minimum notice and a hearing prior to the issuance of the permit in the case of mineral interest owners. [emphasis added].

868 P.2d at 681, n. 17.

¶ 18 This Court noted in *DuLaney* that the statutes had been amended to allow notice to mineral interest owners and landowners in adjacent counties, but that the claim had arisen under the previous statute which did not provide for such notice. Mineral interest owners and property owners adjacent to the proposed landfill site were considered to have a lesser property interest. Applying principles of constitutional due process, this Court overruled two cases, *Stewart v. Rood*, 1990 OK 69, 796 P.2d 321, and the 1991 decision in *Sharp v. 251st St. Landfill*, 1991 OK 41, 810 P.2d 1270, "to the extent that they hold that adjacent landowners have no constitutionally protected interest sufficient to require notice and an opportunity to be heard before a landfill permit will issue." *DuLaney*, 868 P.2d 676, 680. Since our opinion in *DuLaney*, the statutes have changed numerous times.[22] Through all of the revi-

**21.** Our holding with regard to the state constitutional questions is based on Oklahoma law which provides *bona fide*, separate, adequate and independent grounds for our decision. *Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983).

**22.** Notice provisions for landfill permits, under the Solid Waste Management Act, 27A O.S. Supp.1993 § 2–10–101 et seq., specifically, 27A O.S. Supp.1993 § 2–10–301, are now found under the Oklahoma Uniform Environmental Permitting Act, 27A O.S. Supp.1994 §§ 2–14–101 through 2–14–401, under the broader umbrella of the Oklahoma Environmental Quality Code, found at 27A O.S. Supp.1993 § 2–1–101, et seq.

sions regarding notice for these permits, one thing has remained consistent; notice to the landowner is required, even at the lowest tier of the process.

¶ 19 In much the same way the *DuLaney* statutes made the mineral owners' and adjacent landowners' interests "lesser" interests, the ODM statutes and rules also diminish the property interests held by Daffin and other similar landowners (living more than one mile, but within the same county), by restricting their right to be heard until the decision on the application is made.

¶ 20 We addressed the protection of property interests in employment in *Short v. Kiamichi Area Vocational–Technical School District No. 7 of Choctaw County*, 1988 OK 89, 761 P.2d 472. We held a discharged tenured teacher was entitled to a pretermination hearing with the local school board before the termination became final. This was contrary to the applicable statute in *Short*, which allowed only post-termination hearings with the administrative hearing panel after the board's action became final. At the time, it was a question of first impression in Oklahoma whether a tenured teacher was entitled to a pretermination hearing before dismissal or nonreemployment. In reaching our decision, we relied on *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). *Loudermill* held that a state legislature which conferred a property interest in employment, i.e., tenure for teachers, could not constitutionally authorize the deprivation of that interest without appropriate procedural safeguards. The *Loudermill* Court stated:

> [I]f a clearer holding is needed, we provide it today. The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. **"Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty.** The right to due process "is conferred, not by legislative grace, but by

constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." [emphasis added].

470 U.S. 532, 541, 105 S.Ct. 1487, 1493.

### Balancing of Interests

¶ 21 The United States Supreme Court established a balancing test to determine the constitutional sufficiency of the administrative procedures involved. See *Mathews v. Eldridge*, 424 U.S. 319, 334–335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976):

> More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: **First,** the private interest that will be affected by the official action; **second,** the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and **finally,** the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See e.g., *Goldberg v. Kelly, supra,* 397 U.S. [254] at 263–271, 90 S.Ct. [1011] at 1018–1022 [25 L.Ed.2d 287 (1970)]. [emphasis added].

¶ 22 The state's interest must be balanced against the risk of unconstitutionally depriving a property owner of an opportunity to protect his interest. The state's interest in having a smooth administrative process for issuing mining permits is not outweighed by according due process to Daffin and other property owners by allowing them to appear and be heard at an informal conference. Allowing the current procedures to stand, however, threatens the interests of individual property owners and deprives them of due process. Formality at the conference is not required, but they are entitled to appear **and be heard.**

¶ 23 The right to due process is conferred by constitutional guarantee by the United States and the Oklahoma Constitutions.

Daffin's and others' property interests may not be limited by procedures allowing only owners within one mile of the site to appear and be heard. OAC Rule 460:10–17–6(a), and 45 O.S. Supp.2008, 724(H)(2), on which it is based, deprive Daffin and others similarly situated of their constitutional right to be heard.

¶ 24 ODM's charge that it will certainly face "district court challenges" if the injunction is allowed to stand is not well taken. The injunction was necessary because the applicable rule and statute precluded due process to affected property owners. With our pronouncement today that the statute and rule are unconstitutional, future applications will be subject to requests by all county residents for an informal conference. If the ODM administrative process cannot withstand such challenge without depriving property owners of due process, "district court challenges" were already inevitable.

### CONCLUSION

¶ 25 The question before us is not whether Daffin should be charged with actual notice of a pending mining application but merely failed to act. In fact, the newspaper notice in his county apprised him that a permit application had been filed by T & M. It is well documented that he knew the informal conference had been set and that he was aware he could request a formal hearing *after* a decision was made at the informal conference. However, it is also well documented that despite Daffin's awareness and his attempt to be heard at the informal conference, he was told he could attend, but that he could not participate. Despite his alleged ownership of a home in the vicinity of the proposed mining location, he would be required merely to observe the admission of evidentiary materials and statements from other interested property owners, but wait until the hearing officer made a record and issued a decision before being allowed to be heard. Moreover, under the ODM rules, Daffin is not one who would be given notice of the decision under Rule 460:10–17–11(c), but he would have only thirty days in which to request a formal administrative hearing.

¶ 26 We make no judgment as to whether the type of property interest at stake here is more or less deserving of due process than was the potential threat of ground water contamination in *DuLaney*. Moreover, we do not decide whether the positions of Daffin or other property owners at the informal conference will be, or should be, sustained. We merely hold they are entitled to be heard.

¶ 27 The ODM statute and rule limiting Daffin's right to participate in the post-decisional stage of these proceedings do not pass constitutional muster. The trial court's order granting a temporary injunction is affirmed.

¶ 28 AFFIRMED.

ALL JUSTICES CONCUR.